UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RAYSHELL S. JOHNSON,

                                        Plaintiff,

                                                                5:20-cv-1052
v.                                                              (MAD/TWD)

SYRACUSE POLICE DEPARTMENT;
ONONDAGA COUNTY SHERIFF'S OFFICE;[1]
CENTRAL NEW YORK REGIONAL
TRANSPORTATION AUTHORITY,[2]

                                        Defendants.
_____

APPEARANCES:

RAYSHELL S. JOHNSON
  Plaintiff, *pro se*
605 Carbon Street
Syracuse, NY 13208

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

                    **ORDER AND REPORT-RECOMMENDATION**

        The Clerk has sent this *pro se* complaint, together with an application to proceed *in forma*

*pauperis* ("IFP Application"), filed by Rayshell S. Johnson ("Plaintiff") to the Court for review.

_____

        [1]  Although Plaintiff names the "Syracuse Sheriff's Department," the address that
Plaintiff provided for this Defendant is that of the Onondaga County Sheriff's Office.  Any
reference in the complaint to "Syracuse Sheriff's Department" shall be deemed to refer to the
"Onondaga County Sheriff's Office."  The Clerk of the Court is directed to amend the caption to
accordingly.

        [2]  Although Plaintiff names the "Syracuse Central Bus Station" as a Defendant, the
address she provides for this entity is that of the Central New York Regional Transportation
Authority ("Centro").  Any reference in the complaint to "Syracuse Central Bus Station" shall be
deemed to refer to the "Central New York Regional Transportation Authority."  The Clerk of the
Court is directed to amend the caption to accordingly.

(Dkt. Nos. 1, 2.)  For the reasons discussed below, the Court grants Plaintiff's IFP Application and recommends that Plaintiff's complaint be dismissed in its entirety with leave to amend.

## I.    IFP APPLICATION

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).  After reviewing Plaintiff's IFP Application, (Dkt. No. 2), the Court finds she meets this standard.  Therefore, Plaintiff's IFP Application is granted.

## II.    SUFFICIENCY OF THE COMPLAINT

### A.    Standard of Review

28 U.S.C. § 1915(e) directs that when a person proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted . . . ."  28 U.S.C. § 1915(e)(2)(B)(ii).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation."  *Id*.

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  "[T]he tenet that a court must accept as true all of the allegations contained in

a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

A *pro se* litigant's pleadings are held to a less strict standard than attorney drafted pleadings. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, *pro se* litigants are held to a lesser pleading standard than other parties."). Because Plaintiff is proceeding *pro se*, the Court construes her pleadings "to raise the strongest arguments that they suggest." *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (quotation marks omitted). However, this "does not exempt a [*pro se* litigant] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

### B.    Summary of the Complaint

On September 8, 2020, Plaintiff commenced this action.[3]  (Dkt. No. 1.)  Plaintiff has filed a form complaint pursuant to the Americans with Disabilities Act, 42 U.S.C. § 1201 *et seq*. as amended, for "discrimination based upon a disability and the failure to accommodate same"

---

[3]  In addition to the instant action ("*Johnson I*"), Plaintiff commenced three other civil actions on September 8, 2020: *Johnson v. Tucker Missionary Baptist Church*, No. 5:20-CV-1053 (DNH/ATB) ("*Johnson II*"); *Johnson v. Syracuse Police Dep't*, No. 5:20-cv-01054 (DNH/ML) ("*Johnson III*"), and *Johnson v. Syracuse Police Dep't*, No. 5:20-CV-1055 (GTS/ML) ("*Johnson IV*").  In each of these actions, Plaintiff is proceeding *pro se* and *in forma pauperis*.  On October 14, 2020, United States District Judge David N. Hurd accepted and adopted the recommendation of United States Magistrate Judge Andrew T. Baxter and dismissed Plaintiff's complaint in *Johnson II* in its entirety without prejudice and with leave to amend as to certain claims.  *See Johnson II*, Dkt. No. 5.  To date, Plaintiff has not filed an amended complaint and the time within which to do so has expired.  *Id*.  More recently, on November 6, 2020, and November 10, 2020, United States Magistrate Judge Miroslav Lovric recommended that Plaintiff's complaints in *Johnson III* and *Johnson IV*, respectfully, be *sua sponte* dismissed with leave to replead.  *See Johnson III*, Dkt. No. 4; *Johnson IV*, Dkt. No. 4.  As noted by Magistrate Judge Lovric, there appears to be significant overlap in the allegations set forth in the complaints of *Johnson I*, *Johnson II*, *Johnson III*, and *Johnson IV*.  The Court notes Plaintiff used form civil complaint in each of her actions, including 42 U.S.C. § 1983 (*Johnson II*), and Title VII of the Civil Rights Act (*Johnson III* and *Johnson IV*).

against Defendants.  (Dkt. No. 1 at ¶¶ 1, 3.[4])  Her disability is listed as follows: "fearful, shakes, anxiety, sometimes depressed, almost became drug attic, scars & abrasions."  *Id*. at ¶ 4.  As to the conduct at issue in this action, Plaintiff checked "retaliation" and "other acts" and specified that she was "told it was black on black crime."  *Id*. at ¶ 5.  Plaintiff's complaint is difficult to decipher.  In the section of the complaint entitled "FACTS" Plaintiff states, in full:

> Sept. 2016 in car and seen police taz a man.  I was stripped searched outside by Syracuse City Police.  2017 of September I was attacked by Sheriff's Dept.  He put his hand on me while I was leaving and ended upon on the ground before I knew it.

*Id*. at ¶ 6.  As relief, Plaintiff states that "all constitutional and civil rights have been crossed" and seeks "maximum rewards towards all cases."  *Id*. at ¶ 7.  Attached to the complaint is a letter dated October 30, 2018, from the City of Syracuse Office of the Corporation Counsel, with a handwritten notation in the upper right corner stating, "just an attachment showing how long I've been trying to take care of my complaints."  (Dkt. No. 1 at 5.)

**C.    Analysis**

In addressing the sufficiency of Plaintiff's complaint, the Court construes her pleadings liberally.  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).  For reasons set forth, the Court recommends dismissal of the complaint in its entirety.

**1.    ADA**

To the extent Plaintiff attempts to assert any claim pursuant to the ADA, the Court recommends dismissal.  The ADA provides protection against discrimination based upon

---

[4] Page references to documents identified by docket number are to the page numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.  Paragraph numbers are used where documents identified by the CM/ECF docket number contain consecutively numbered paragraphs.  Unless noted, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

disability.  42 U.S.C. § 12101, *et seq*.  Title I of the ADA governs employment actions; Title II covers public services and programs; and Title III governs public accommodations.  *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004).  Plaintiff does not specify what portions of the ADA are triggered.  Reading the complaint liberally, it appears that she brings this action under Title II.

Title II of the ADA provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  To successfully plead a Title II claim, "[t]he [plaintiff] must establish that [s]he (1) is a qualified individual with a disability; (2) is being excluded from participation in, or being denied benefits of some service, program or activity by reason of his or her disability; and (3) the entity providing the service is a public entity."  *Allah v. Goord*, 405 F.Supp.2d 265, 274 (S.D.N.Y. 2005).

Here, although Plaintiff has utilized a form ADA complaint and lists numerous physical and mental disabilities, including anxiety and depression, the complaint does not indicate who Plaintiff is suing for violations of her rights under the ADA and what relief, if any, she seeks with respect to that claim.  Nowhere in the complaint is there an allegation that Plaintiff has, or was discriminated against, because of a disability or a perceived disability.  Even assuming Plaintiff was disabled under the ADA, the complaint fails to state a viable cause of action against any Defendant because Plaintiff does not allege facts to plausibly suggest that any Defendant discriminated against her.  *See Wenger v. New York State Dep't of Health*, No. 5:14-CV-885 (DNH/TWD), 2015 WL 3397958, at *5 (N.D.N.Y. May 26, 2015) (dismissing the discrimination claim under ADA where the complaint "provide[d] few specifics regarding [the plaintiff's] care, the services of which he was allegedly deprived, or programs in which he was allegedly not

allowed to participate, or any reasons therefor articulated by [the defendants]").  "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning."  *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) (citing *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977); *Koch v. Yunich*, 533 F.2d 80, 85 (2d Cir. 1976); *Powell v. Jarvis*, 460 F.2d 551, 553 (2d Cir. 1972)).

Accordingly, the Court recommends dismissing Plaintiff's ADA claims for failure to state a claim upon which relief may be granted.

### 2.     42 U.S.C. § 1983

To the extent that Plaintiff intended to assert claims pursuant to 42 U.S.C. § 1983, the Court also recommends dismissal.  Section 1983, establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990); *see also Myers v. Wollowitz*, No. 95-CV-0272 (TJM), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights").  "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).  Thus, to state a cognizable claim under Section 1983, a complaint must allege "(1) 'that some person has deprived [the plaintiff] of a federal right,' and (2) 'that the person who has deprived [the plaintiff] of that right acted under color of state law.'"  *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)) (alteration omitted).

### a.    Syracuse Police Department and Onondaga County Sheriff's Office

"[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (dismissing Section 1983 claim brought against the Lynbrook Police Department); *see also La Grande v. Town of Bethlehem Police Dep't*, No. 1:08-CV-0738 (LEK/DRH), 2009 WL 2868231, at *2 (N.D.N.Y. Sept. 1, 2009) ("Since the Bethlehem Police Department cannot be sued pursuant to 42 U.S.C. § 1983, [the plaintiff's] [c]omplaint is dismissed as against the Town of Bethlehem Police Department."); *Jenkins v. Liadka*, No. 5:10-CV-1223 (GTS/DEP), 2012 WL 4052286, at *5 (N.D.N.Y. Sept. 13, 2012) ("Because the Syracuse Police Department is merely an administrative arm of the City of Syracuse, it is not a proper defendant.").

While Plaintiff could sue the municipalities—the City of Syracuse and Onondaga County—themselves, rather than one of their "departments," a municipality may only be named as a defendant in certain circumstances. Pursuant to the standard for establishing municipality liability laid out in *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978), in order to set forth a cognizable claim for municipal liability under Section 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell*, 436 U.S. 658); *see also Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer.") A municipality may be liable for deprivation of constitutional rights under Section 1983 for policies or customs resulting in

inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989). A plaintiff must also establish a causal connection – an affirmative link–between the policy and the deprivation of his constitutional rights. *Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985) (plurality opinion).

Here, Plaintiff has failed to identify or allege any facts plausibly showing the existence of a municipal policy or custom of the City of Syracuse or Onondaga County authorizing, permitting, allowing, or tolerating "abuses in violation of the Constitution" or any affirmative link between such a policy and defendants' alleged actions with regard to Plaintiff. Importantly, a municipality may not be held liable solely because it employs a tortfeasor. *Los Angeles Cty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010). Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Monell*, 436 U.S. at 694.

Here, Plaintiff's conclusory, vague, and confusing allegations fail to state a constitutional claim against the City of Syracuse, the County of Onondaga, or any individual officer working for either entity.

As a result, the Court recommends dismissal of Plaintiff's Section 1983 claims against Defendants Syracuse Police Department and Onondaga County Sheriff's Office for failure to state a claim upon which relief may be granted.

### b.    Centro

"Centro is a public benefit corporation, N.Y. Pub. Auth. Law § 1328(a), and it is therefore considered a municipal entity for purposes of § 1983." *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 489 (N.D.N.Y. 2017) (Hurd, J.) (citing *Byrd v. Metro Transit Auth.*, 15-CV-

1364, 2015 WL 4546718, at *2 (E.D.N.Y. July 28, 2015) ("Public benefit corporations, such as the MTA, are municipal entities for the purpose of Section 1983.")).  As a result, only when Centro, through the execution of its policies, actually deprives an individual of her constitutional rights, is it liable for the injury.  *Monell*, 436 U.S. at 694.

Although Plaintiff names Centro as a Defendant, the complaint does not contain any factual allegations concerning Centro.  "Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff."  *Cipriani v. Buffardi*, No. 06-CV-0889 (LEK/DRH), 2007 WL 607341, *1 (N.D.N.Y. Feb. 20, 2007).

As a result, the Court recommends dismissal of Plaintiff's Section 1983 claims against Centro for failure to state a claim upon which relief may be granted.

### D.     Conclusion

For the reasons stated above, the Court grants Plaintiff's IFP application (Dkt. No. 2) and recommends that Plaintiff's complaint (Dkt. No. 1) be dismissed in its entirety pursuant to 28 U.S.C. § 1915(e).

## III.    OPPORTUNITY TO AMEND

Generally, when the court dismisses a *pro se* complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile.  *Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).  Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it.  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

This Court has serious doubts about whether Plaintiff can amend her complaint to assert actionable claims against any Defendant.  Nevertheless, out of deference to Plaintiff's *pro se* status, the Court recommends that she be granted leave to amend consistent with the foregoing.

If the District Court adopts and approves this Report-Recommendation, and if Plaintiff chooses to file an amended complaint, any amended complaint must comply with the Federal Rules of Civil Procedure.  Any such amended complaint must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act.  In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations.  *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  Any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court.  *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED**;[5] and it is further

**ORDERED** that the Clerk is directed to amend the docket such that Defendant "Syracuse Sheriff's Dept." is changed to Defendant "Onondaga County Sheriff's Office;" and it is further

_____

[5]  Plaintiff should note that, although the Court has granted her IFP Application, she will still be required to pay fees that she may incur in this action, including copying and/or witness fees.

**ORDERED** that the Clerk is directed to amend the docket such that Defendant "Syracuse Central Bus Station" is changed to Defendant "Central New York Regional Transportation Authority;" and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED IN ITS ENTIRETY WITH LEAVE TO AMEND** pursuant to 28 U.S.C. § 1915(e)(B); and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with a copy of the unpublished decision cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[6]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).


Dated:  November 25, 2020
        Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[6]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

2015 WL 3397958
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Walter WENGER, Plaintiff,
v.
NEW YORK STATE DEPARTMENT OF HEALTH;
Mark Lankes, Individually and as Director of Ddso
Region 2; Todd Podkowka, Individually and as
Director of Health Services; Matthew Johnson, Rn,
Individually and as Treatment Team Leader of Ira3;
Kay H. Romero, Individually and as Senior Attorney
for Opwdd; Charles Zelows, Individually and as
Treatment Team Leader of Ira3; David Viggiani,
individually and as Due Process Hearing Officer;
Laurie A. Kelley, Individually and as Acting Director
of Opwdd; and Kerry A. Delaney, Individually
and as Acting Director of Opwdd, Defendants.

No. 5:14–CV–885 (DNH/TWD).
|
Signed May 26, 2015.

**Attorneys and Law Firms**

Walter Wenger, Canastota, NY, pro se.

### DECISION and ORDER

DAVID N. HURD, District Judge.

**\*1** Pro se plaintiff Walter Wenger filed this civil rights action primarily on behalf of his son Steven Joseph Wenger, in his capacity as Steven's court appointed guardian. On April 17, 2015, the Honorable Thérèse Wiley Dancks, United States Magistrate Judge, advised by Report–Recommendation that plaintiff's complaint be dismissed without prejudice. No objections to the Report–Recommendation were filed.

Based upon a careful review of the entire file and the recommendations of the Magistrate Judge, the Report–Recommendation is accepted in whole. *See* 28 U.S.C. § 636(b)(1).

Therefore, it is

ORDERED that

1. Plaintiff's complaint is DISMISSED without prejudice; and

2. The Clerk serve a copy of this Decision and Order upon plaintiff in accordance with the Local Rules.

IT IS SO ORDERED.

### ORDER AND REPORT–RECOMMENDATION

THÉRÈSE WILEY DANCKS, United States Magistrate Judge.

**I. FACTUAL AND PROCEDURAL BACKGROUND**
The Complaint of *pro se* Plaintiff Walter Wenger was received for filing in the Northern District of New York on July 18, 2014, along with an application to proceed *in forma pauperis*. (Dkt. Nos. 1 and 2.) By Order of October 27, 2014, the Court granted Plaintiff's application to proceed *in forma pauperis*. (Dkt. No. 4.)

Although not indicated in the caption, the factual allegations, the claimed injuries, and the relief sought, show that while Plaintiff has asserted limited claims on his own behalf, he has brought this action primarily on behalf of his son Steven Joseph Wenger ("Steven"), in his capacity as Steven's court appointed guardian. (*See generally,* Dkt. Nos. 1 and 4.) Plaintiff was appointed sole guardian of Steven's person and property in 1998 after Steven received a traumatic brain injury in a 1991 automobile accident at the age of fifteen. (Dkt. No. 4 at 2.)

Plaintiff commenced this civil rights action pursuant to 42 U.S.C. § 1983 out of concern over Steven's care and treatment since he became a resident of IRA3 in Rome, New York on October 3, 2011. [1] (Dkt. No. 1 at ¶ 1.) IRA3 is a New York State Department of Health ("NYDOH") Individual Residential Alternative Group Home operated by the New York State Office for People with Developmental Disabilities ("OPWDD") and staffed by the Developmental Disabilities State Office ("DDSO"), Region 2. *Id.* According to Plaintiff, from the time Steven became a resident at IRA3, he has suffered from general neglect and has been denied services recommended by specialists and promised to Plaintiff, including an appropriate wheelchair; appropriate sensory stimulation; appropriate physical, occupational, and speech

therapy; development of a communication mechanism; and community inclusion through outings in the local community away from the IRA3 setting. *Id.* at ¶ 8. On December 9, 2013, Steven's arm was broken, allegedly by unnamed staff at IRA3. *Id.,* at ¶ 11. Thereafter, an order was issued stopping all therapy and inclusion activities for Steven. *Id.* at ¶ 14.

1    Because familiarity with the October 27, 2014, Order (Dkt. No. 4) setting forth in detail the factual background and the claims being pursued by Plaintiff on behalf of Steven and on his own behalf is presumed, only a brief summary is included herein.

**\*2** N.Y. Comp.Codes R. & Regs. ("NYCRR") Tit. 14, § 633.12 requires agencies providing facilities and community based waiver services to developmentally disabled individuals to develop policies and procedures establishing mechanisms, including administrative hearings, to resolve objections to services. § 633.12(a)(1). Guardians are included among those who may initiate objections. § 633.12(a)(4). Plaintiff filed three hearing requests in April of 2014 to address the provision of an appropriate wheelchair; coma stimulation; and physical, occupational and speed therapy for Steven. *Id.* at ¶ 18. The hearing requests were consolidated. *Id.* at ¶ 19. The hearing was not held within the time requirements set forth in § 633.12(a)(8)(c). *Id.*

Plaintiff got into a disagreement with the hearing officer during a pre-hearing telephone conference on June 19, 2014, and as a result the hearing was postponed to July 22, 2014. *Id.* at ¶¶ 20, 29. Plaintiff filed a motion for recusal of the hearing officer on June 16, 2014. *Id.* at 28. Upset over being subjected to what he believed to be arbitrary violations of procedure, Plaintiff submitted appeals on the three hearing requests to the OPWDD Commissioner on June 25 and 26, 2014, without waiting for the hearing to be held and a decision to be issued. *Id.* at 21. As of the filing of the Complaint in this action, Plaintiff had received no decisions on the appeals, even though decisions are required to be rendered no later than fourteen days after receipt of the appeal. *Id.* at 21.

On June 12, 2014, Plaintiff also filed a request for a hearing regarding Defendant Todd Podkowka's position that he cannot prescribe anything for Steven that is not FDA approved, and that it would not be paid for by insurance, as well as Johnson's email that all therapies provided "have to be FDA approved, not experimental, medically safe, and ordered by a licensed practitioner." *Id.* at ¶ 23. No hearing date had been set as of the filing of the Complaint. *Id.* at 25–26.

Plaintiff commenced this lawsuit prior to the administrative hearing scheduled for July 22, 2014, on his three consolidated requests. The suit includes challenges to both Defendants' handling of the state administrative procedure and the administrative procedure itself. (*See generally* Dkt. No. 1.)

Defendants in this action are the NYDOH; Laurie A. Kelley ("Kelley"), Acting Director of OPWDD; Kerry A. Delaney ("Delaney"), Acting Director of OPWDD; Mark Lankes ("Lankes"), Director of DDSO, Region 2; Matthew Johnson, RN, Team Treatment Leader Rome Office–BOA; Charles Zelows ("Zelows"), Treatment Team Leader of IRA3; Todd Podkowka ("Podkowka"), Director of Health Services; Kay Romero ("Romero"), Senior Attorney for OPWDD; and David Viggiani ("Viggiani"), hearing officer on Plaintiff's hearing requests.

Plaintiff has asserted claims for violation of Steven's and his own Fourteenth Amendment due process rights under § 633.12; violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.,* as amended, by denying Steven appropriate rehabilitation services and materials and denying him community inclusion by keeping him isolated in IRA3;[2] and the Health Insurance Portability and Accountability Act of 1966 ("HIPAA"), 42 U.S.C. § 1320, *et seq.* (Dkt. No. 1 at p. 4.)

2    Plaintiff describes part of his claim under Title II of the ADA as an "Olmstead Act" claim. (Dkt. No. 1 at ¶ 43.) In *Olmstead v. L.C. ex ret Zimring,* 527 U.S. 581, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999), the Supreme Court held that unjustified isolation or segregation of qualified individuals through institutionalization is a form of discrimination prohibited under the ADA. *See* 42 U.S.C. § 12101(a)(2) (identifying the isolation and segregation of individuals with disabilities as a form of discrimination). The decision was followed by Executive Order 13217, issued by President George W. Bush on June 18, 2001, which called upon the federal government to assist states and localities in the swift implementation of the decision.

**\*3** The relief sought by Plaintiff includes replacement of 14 NYCRR § 633.12; money damages to Steven for the harm, deprivation, and neglect he has suffered, including harm connected to his fractured arm;[3] money damages to

Plaintiff for his expenditures, time, and mental anguish for his efforts as Steven's guardian; making up lost services to Steven, including community outings and providing Steven with the services and rehabilitation measure recommended by Plaintiff and medical specialists; compensatory and punitive damages for the violation of § 1983; and an injunction enjoining Defendants from violating HIPAA and other laws affecting Steven and himself *Id.* at pp. 26–27.

3    Plaintiff seeks damages as a result of the fracture for both Steven and himself in this action despite acknowledging that there is a separate personal injury action pending with regard to the fracture. Id. at ¶ 11 and p. 27; Dkt. No. 5 at p. 8.

## II. Plaintiff's Motion for Appointment of Counsel

Because Plaintiff, who is not an attorney and not represented by counsel, may not appear on behalf of his developmentally disabled son Steven, *see Cheung v. Youth Orchestra Found. of Buffalo, Inc.,* 906 F.2d 59, 61 (2d Cir.1990), the Court deferred the requisite initial review of the Complaint pursuant to 28 U.S.C. § 1915(e) and stayed the case for ninety days in order to give Plaintiff time to retain counsel or move for the appointment of counsel. [4] (Dkt. No. 4 at 3.)

4    The Court deferred initial review as to the claims asserted on Steven's behalf as well as those asserted on Plaintiff's own behalf because the claims are intertwined and to some extent derivative, and the Second Circuit has instructed that no issues concerning litigation brought on an incompetent's behalf should be decided until the counsel issue is resolved. *See Cheung,* 906 F.2d 62.

Plaintiff has filed a motion for the appointment of counsel so that he may pursue the litigation on behalf of Steven. (Dkt. No. 5.) For reasons explained below, the motion is denied.

### A. Law Regarding Appointment of Counsel for an Incompetent

An incompetent person normally lacks the capacity to bring suit for himself. *Berrios v. New York City Hous. Auth.,* 564 F.3d 130, 134 (2d Cir.2009). Federal Rule of Civil Procedure Rule 17(c) provides that an incompetent person may be represented by a general guardian, a committee, or a similar fiduciary, *see* Fed.R.Civ.P. 17(c)(1), and that:

an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem or issue another appropriate order to protect ... an incompetent person who is unrepresented in an action.

Fed.R.Civ.P. 17(c)(2). "Thus, as to a claim on behalf of an unrepresented ... incompetent person, the court is not to reach the merits without appointing a suitable representative." *Berrios,* 564 F.3d at 134. If the representative of an incompetent person under Rule 17(c) is not an attorney, he or she must be represented by an attorney in order to conduct the litigation. *Id.* (citing *Wenger v. Canastota Central School Dist.,* 146 F.3d 123, 125 (2d Cir.1998) ("[W]ithout ... counsel, the case will not go forward at all."), *overruled on other grounds by, Winkelman ex. rel. Winkelman v. Parma City School Dist.,* 550 U.S. 533 (2007)). In *Wenger,* which also involved Plaintiff's attempt to litigate claims on behalf of Steven, the Court found that it was up to the district court whether under the predecessor to Rule 17(c)(2), counsel should be appointed for Steven, and directed the court to examine the issue pursuant to the standards for determining whether to appoint counsel to an indigent person under 28 U.S.C. § 1915(e). *Wenger,* 146 F.3d at 125.

*4 Although 28 U.S.C. § 1915(e)(1) authorizes the court "to request an attorney to represent any person unable to afford counsel," a civil litigant has no constitutional right to the assistance of counsel. *See Berrios,* 564 F.3d at 134. A court may deny a motion to appoint counsel, even for an incompetent, "when it is clear that no substantial claim may be brought on behalf of such a party." *Wenger,* 146 F.3d at 125. "If it is not clear to the court whether a substantial claim may be asserted on [the incompetent's] behalf, the court should decide whether to appoint counsel, taking into consider[ation] the fact that, without appointment of counsel, the case will not go forward at all." *Id* .; *see also Cooper v. A. Sargenti Co., Inc.,* 877 F.2d 170, 172 (2d Cir.1989) (appointment of counsel should only be made where the allegations raise a claim that is likely to be of substance). The complaint should be dismissed without prejudice when no counsel is secured or appointed for the incompetent. *Berrios,* 564 F.3d at 135.

In support of his motion, Plaintiff has included correspondence from a number of attorneys whom he has asked to represent Steven's interests in this action. (Dkt. No. 5 at A and pp. 6–15.) All have either declined representation or not responded. *Id.* Most significant to Plaintiff's motion is a December 17, 2014, letter from Mental Hygiene Legal Service ("MHLS"), Appellate Division, Fourth Department, [5] Senior Attorney Megan E. Dorr, Esq., in response to a request from Plaintiff that the MHLS represent Plaintiff and Steven in lawsuits Plaintiff believes are necessary to protect Steven's rights. Declining Plaintiff's request, Attorney Dorr wrote:

[5] "The MHLS provides legal services, advice and assistance to persons receiving care or alleged to be in need of care at inpatient and community-based facilities for the mentally disabled. Created in 1964 and organized under Mental Hygiene Law Article 47, MHLS represents such persons injudicial and administrative proceedings concerning ... treatment." (*See* https://www.nycourts.gov/ courtsad4/mhls/mhls-index.html (last visited on April 1, 2015).

Please be advised that MHLS will continue to represent your son and take any action we believe, in our professional judgment, to be in his best interest. Based upon multiple contacts with Steven, multiple contacts with his service providers, and our review of many records related to the services he is provided, we do not believe any legal action is necessary.
*Id.* at p. 13.

**B. Analysis of Plaintiff's Request for Appointment of Counsel**
Although the allegations in the Complaint, along with litigation Plaintiff has pursued on Steven's behalf over the years, [6] clearly reveal Plaintiff's love and concern for Steven and his tireless devotion to the care of his son, I find that the Complaint does not warrant appointment of counsel. [7]

[6] Other litigation brought by Plaintiff on Steven's behalf over the years includes *Wenger v. Canastota Cent. School Dist.,* 181 F.3d 84 (2d Cir.1999) (unsuccessful action against the school district and individual officials under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, et seq.; Section 504 of the Rehabilitation

Act of 1973, 29 U.S.C. § 794, et seq.; and the due process clause of the Fourteenth Amendment); *Wenger,* 146 F.3d 123 (lawsuit asserting the same claims on Steven's behalf)

[7] My assessment of the claims asserted on behalf of Steven is undertaken solely for the purpose of determining Plaintiff's motion for the appointment of counsel and is not intended as an assessment on the merits of any claims Steven may have against Defendants. Because by Plaintiff's own admission, litigation regarding Steven's broken arm is pending in another forum, I have not considered claims arising out of the fracture.

1. *NYDOH, Kelley and Delaney*
Defendant NYDOH is entitled to sovereign immunity under the Eleventh Amendment with regard to Plaintiff's claims. *See Anghel v. New York State Dept. of Health,* 947 F.Supp.2d 284, 298 (E.D.N.Y.2013), *aff'd,* 589 F. App'x 28 (2d Cir.2015). The Complaint alleges no personal involvement on the part of OPWDD supervisory officials Acting Directors Kelley and Delaney in Steven's care and treatment or Plaintiff's hearing requests, as is required for a claim for money damages under 1983. *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977). Further, there are no allegations in the Complaint suggesting that Kelley and Delaney, acting in their official capacities, have the authority to grant Plaintiff's request for injunctive relief abandoning the administrative procedures set forth in § 633.12 and replacing those with "the Federal Part 300 and New York Parts 200 Regulations currently in effect by the New York State Department of Education." (Dkt. No. 1 at p. 25.)

2. *Title II of the ADA*
**\*5** The allegations in the Complaint regarding Plaintiff's care and treatment, *i.e.,* having an appropriate wheelchair; appropriate sensory stimulation; appropriate physical therapy, occupational therapy, and speech therapy; and community inclusion appear to form the basis of the claim asserted on Steven's behalf under Title II of the ADA. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." [8] 42 U.S.C. § 12132. In order to state a claim under Title II of the ADA, a plaintiff must allege that "(1) he or she is a qualified individual with a disability;

(2) ... defendants are subject to the ADA; and (3) that plaintiff was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants by reason of plaintiff's disabilities." *Shomo v. City of New York,* 579 F.3d 176, 185 (2d Cir.2009) (citation and internal punctuation omitted).

[8] "Services, programs, or activities," not explicitly defined in the ADA have been construed by the Second Circuit as "a catch-all phrase that prohibits all discrimination by a public entity, regardless of the context...." *Innovative Health Sys., Inc. v. City of White Plains,* 117 F.3d 37, 43 (2d Cir.1997), *superseded on other grounds as recognized by Zervos v. Verizon NY, Inc.,* 252 F.3d 163, 171 n. 7 (2d Cir.2001).

Although Title II of the ADA does not provide for individual capacity suits against public officials, *see Garcia v. State Univ. of N.Y. Health Scis. Ctr.,* 280 F.3d 98, 107 (2d Cir.2001), a Title II claim can be asserted against a public official in his or her official capacity. *See Keitt v. New York City,* 882 F.Supp.2d 412, 456–57 (S.D.N.Y.2011) ("Individuals in their personal capacities are not proper defendants on claims brought under the ADA ..., although individuals can be sued in their official capacities under [the ADA].") However, under *Garcia,* claims for money damages against state officials in their official capacities under Title II of the ADA are barred by the Eleventh Amendment, absent a showing that a violation was motivated by discriminatory animus or ill will due to the disability. *Id.* at 112. *See, however, Tennessee v. Lane,* 541 U.S. 509, 533–34, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004) (for an ADA Title II claim to overcome Eleventh Amendment immunity, the Title II claim must implicate a fundamental right under the Fourteenth Amendment). Given the foregoing, Plaintiff cannot assert a Title II of the ADA claim against any of the individual Defendants in their individual capacity and likely would be limited to prospective injunctive relief on official capacity claims.

The allegations in Plaintiffs Complaint show an ongoing dispute between Plaintiff, on the one hand, and Defendants Lankes, Johnson, Zelows, and Podkowka, on the other, regarding Steven's care and the services provided to him at IRA3. (*See generally* Dkt. 1.) The allegations in the Complaint are, however, conclusory in nature. The Complaint provides few specifics regarding Steven's care, the services of which he was allegedly deprived, or programs in which he was allegedly not allowed to participate, or any reasons therefor articulated by Defendants. Those allegations in

Plaintiff's Complaint which are specific, such as his allegation regarding Defendant Podkowka's position that he could not prescribe drugs or treatment for Steven that was not FDA approved, *id.* at ¶ 23, and the limitations imposed on Steven's activities by Podkowka and other staff because of his broken arm, *id.* at ¶ 14, do not appear to be sufficient to support a discrimination claim under Title II of the ADA.

#### 3. *Procedural Due Process Claim*

**\*6** With regard to Plaintiff's Fourteenth Amendment due process claim arising out § 633.12, Defendant Viggiano, as hearing officer, is likely to be found entitled to absolute immunity with respect to Plaintiff's due process claims. (*See* Dkt. No. 1 at ¶ 21.) *See Butz v. Economou,* 438 U.S. 478, 514, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (absolute judicial immunity extends to officers such as administrative law judges and hearing officers). The immunity has been found to extend to state hearing officers. *See, e.g., Bloom v. NYS Comm'n of Health,* 573 F.Supp.2d 732, 739 (E.D.N.Y.2004) (administrative law judge presiding over professional medical conduct bureau is entitled to absolute immunity).

The allegations in the Complaint that Defendant Romero, attorney for OPWDD, usurped the responsibilities of the hearing officer and Defendant Lankes, by performing her "role as it pertains to 14 NYCRR 633.12[of] assisting appropriate staff with obtaining a hearing officer, scheduling the hearing and preparing the Notice of Hearing" suggest nothing more than that Romero was performing her employment responsibilities. (Dkt. No. 1 at ¶¶ 29–31.) The allegations do not appear to support a due process claim against her.

The allegations against Lankes with respect to the administrative hearing are that he consolidated Plaintiff's hearing request and scheduled the hearings at a later time than allowed under § 633.12; informed Plaintiff that the June 19, 2014, hearing date had been changed to a pre-hearing telephone conference with the hearing officer; and postponed the June 19th hearing date when Plaintiff refused to agree to the hearing ground rules imposed by the hearing officer. *Id.* at ¶¶ 18–20. Those allegations in and of themselves, particularly given Plaintiff's complicity in the hearing delay, appear inadequate to support a denial of due process claim. *Id.* at ¶ 29.

Moreover, the allegations in the Complaint reveal that Plaintiff commenced this lawsuit prior to the administrative hearing scheduled for July 22, 2014. *Id.* at ¶ 29. Although

as a general rule there is no exhaustion of remedies requirement before commencing a § 1983 action, "to the extent a plaintiff claims a violation of procedural due process under the Fourteenth Amendment, failure to pursue available procedural remedies can preclude a § 1983 claim." *Forcucci v. Board of Educ. of Hamburg Central School Dist.,* No. 14–CV–830–A, 2014 WL 5393024, at * 5, 2014 U.S. Dist. LEXIS 150410, at * 12–13 (W.D.N.Y. Oct.23, 2014)[9] (Arcara, D.J.) (citing *Rivera–Powell v. N.Y. City Bd. of Elections.,* 470 F.3d 458, 467 n. 9 (2d Cir.2006)) ("Where a state law remedy gives a party a meaningful opportunity to challenge the state's action, he is not deprived of due process simply because he failed to avail himself of the opportunity.")

[9]     A copy of the unpublished decision will be provided to Plaintiff by the Clerk pursuant to *LeBron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam).

Section 633.12 provides for an administrative hearing (§ 633.12(a)(8)(c)), an appeal to the commissioner from the hearing officer's determination (§ 633.12(a)(8) (d )), and judicial review pursuant to N.Y. C.P.L.R. Article 78 (§ 633.12(a)(l 1)). While Plaintiff has alleged that the hearing was not held in a timely manner under the regulation, a hearing had been scheduled when this action was commenced, and Plaintiff, as Steven's guardian, failed to avail himself of that hearing and the rights to thereafter appeal to the commissioner and commence an Article 78 proceeding in state court if necessary. *See New York State Nat'l Org. for Women v. Pataki,* 261 F.3d 156, 169 (2d Cir.2001) ("[A] procedural due process violation cannot have occurred when governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies."). Furthermore, while Plaintiff has issues with the manner in which the administrative procedure was being handled and the administrative procedure itself, there are no allegations in the Complaint showing that, despite the delay in the hearing, exhaustion was futile. *See Coleman v. Newburgh Enlarged City School Dist.,* 503 F.3d 198, 205 (2d Cir.2007) ("To show futility, a plaintiff must demonstrate that adequate remedies are not reasonably available or that the wrongs would not have been corrected by resort to the administrative hearing process.") (citation and internal quotation marks omitted).

4. *HIPAA and Plaintiff's Alleged Right to Determine Steven's Medical Care*

**\*7** Plaintiff alleges in his Complaint that Defendants Lankes, Zelows, and Podkowka have violated Steven's rights under HIPAA and Steven's right, as exercised by Plaintiff as his guardian, to determine his medical care. (Dkt. No. 1 at ¶¶ 44, 53.) As with the other claims, I find that the Complaint does not appear to show the existence of a claim of sufficient substance to warrant appointment of counsel.

Courts addressing the issue have overwhelmingly concluded that there is no private right of action under HIPAA. *See, e.g., Wilkerson v. Shineski,* 606 F.3d 1256, 1267 n. 4 (10th Cir.2010); *Miller v. Nichols,* 586 F.3d 53, 59 (1st Cir.2009). The allegations in Plaintiff's Complaint with respect to decisions concerning Steven's medical care show a general, ongoing dispute between Plaintiff and Steven's caretakers at IRA3 regarding his medical care and disclosure of medical information. *Id.* at ¶¶ 23, 39, 44–53. According to the Complaint, Lankes' position with regard to Plaintiff's medical care is that "[a]s you have entrusted Steven's physical custody, medical care and overall protective oversight to us at the OPWDD certified residence, we have a responsibility to assure that Steven's health care needs are met." *Id.* at 48. Plaintiff's position is that as Steven's guardian, he has the right to determine Steven's medical care. *Id* . at 44.

The two specific instances complained of where Defendants took action with respect to Steven's health care without Plaintiff's consent involved making appointments for Steven at the Joslin Clinic and ENT Clinic at SUNY Upstate. *Id.* at ¶ 45. According to the Complaint, Plaintiff was notified by Zelows that the appointments had been made. *Id.* Plaintiff's complaint is that his approval was not sought ahead of time so that he could consult with the medical professionals before the appointments. *Id.* at 46. Plaintiff has not alleged facts showing that the appointments were not in Steven's best interest, that the appointments or other specific actions taken by Defendants with regard to Steven's medical care were injurious to Steven, or that Steven has been injured as a result. *Id.* at ¶¶ 45–53. In fact, Plaintiff claims that whether or not he agrees with particular medical services is irrelevant; that the issue is that he was told of the appointments without having been given the opportunity to conduct the proper investigation and decline the services as Steven's guardian. *Id.* at ¶ 49.

5. *Recommendation of Dismissal of Complaint without Prejudice With Regard to Claims Asserted on Behalf of Steven*

Under Second Circuit case law, my denial of Plaintiff's motion for appointment of counsel to represent Steven in this

action requires that all claims asserted on Steven's behalf in Plaintiff's Complaint be dismissed without prejudice. *Berrios, 564 F.3d at 135* (requiring dismissal of the complaint without prejudice when no counsel is secured or appointed for the incompetent). Therefore, I recommend that the claims asserted on Steven's behalf by Plaintiff be dismissed without prejudice.

## III. RECOMMENDATION UPON INITIAL REVIEW

### A. Legal Standard for Initial Review of Complaint

**\*8** Plaintiff has also asserted claims on his own behalf against Defendants. Even when, as in this case, a plaintiff meets the financial criteria for *in forma pauperis, 28 U.S.C. § 1915(e)* directs that when a plaintiff proceeds *in forma pauperis,* "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." *28 U.S.C. § 1915(e)(2)(B)(i)-(iii).* The Court previously deferred initial review pending resolution of the representation issue. (Dkt. No. 4.)

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).* "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy, or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir.1998)* (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin, 700 F.2d 37, 41 (2d Cir.1983),* the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully, 943 F.2d 259, 260 (2d Cir.1991)* (*per curiam* ) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).* While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.* In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.), cert. denied, 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994)* (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal, 556 U.S. at 678.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

**\*9** Where a plaintiff proceeds *pro se,* the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir.2008)* (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir.1999)* (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir.2000).*

### B. Claims Asserted by Plaintiff on his Own Behalf

In the Complaint, Plaintiff claims that: (1) witnessing Steven's physical and emotional suffering associated with his broken arm and Steven's isolation has caused Plaintiff to suffer emotional harm; and (2) Plaintiff's life has been greatly disrupted by Defendants' actions, and he has expended and continues to expend significant resources in attempting to obtain services and benefits guaranteed to Steven by law. (Dkt. No. 1 at pp. 24–25.) Plaintiff seeks compensatory damages for his expenditures and time in connection with his efforts on behalf of Steven and for his mental anguish caused by the harm, deprivation and neglect long endured by Steven. *Id.* at p. 27.

The Complaint can be construed as an attempt by Plaintiff to pursue his own due process claim under § 1983 relating to the administrative procedure set forth at § 633.12, and his own claim under Title II of the ADA for expenditures made by

him to enforce Steven's rights under the provision. *See, e.g., A.M. ex rel. J.M. v. NYC Dept. of Educ.,* 840 F.Supp.2d 660, 674–675 (E.D.N.Y.2012) (concluding that under *Winkelman,* 550 U.S. 516, 127 S.Ct. 1994, 167 L.Ed.2d 904, the parent of a child with a disability has standing to pursue claims under the ADA on his own behalf), *aff'd, sub. nom. Moody ex rel. J.M. v. NYS Dept. of Educ.,* 513 F. App'x 95 (2d Cir.2013), cert. denied, ——U.S. ——, 134 S.Ct. 809, 187 L.Ed.2d 597 (2013).

I recommend that the § 1983 due process and Title II of the ADA claims asserted by Plaintiff on his own behalf be dismissed without prejudice for failure to state a claim, and that the Court, in the exercise of its discretion, decline to exercise supplemental jurisdiction over Plaintiff's state law claim arising out of Steven's broken arm.

### 1. *Due Process Claim*

14 NYCRR § 633.12 gives Plaintiff, as Steven's father and guardian, the right to object on Steven's behalf to a plan of services for his son and sets forth the administrative procedure available for doing so. However, the Court finds that Plaintiff has failed to state a Fourteenth Amendment due process claim against Defendants because while the consolidated hearing was not held in a timely manner, and Plaintiff did not agree with the ground rules imposed by the hearing officer, there are no allegations suggesting that he was precluded from going through the administrative process or that doing so would have been futile, particularly given that there was a hearing scheduled to be held a few days after Plaintiff commenced this lawsuit. Furthermore, Plaintiff cannot be said to have been deprived of due process simply because he failed to avail himself of each of the steps of the available administrative procedure. *See Forcucci,* 2014 WL 5393024, at * 5.

### 2. *Claim Under Title II of the ADA*

 **\*10** While Plaintiff may have standing to pursue a claim under Title II of the ADA on his own behalf, he has no claim under Title II of the ADA against the individual defendants in their individual capacities. *See Garcia,* 280 F.3d at 107. Moreover, there are no allegations in the Complaint suggesting that Plaintiff's Title II of the ADA money damages claim against Defendants in their official capacities would not be barred by the Eleventh Amendment. *Id.* In addition, because of the conclusory nature of the allegations in the Complaint discussed above, I find that Plaintiff has failed to state a claim on his own behalf under Title II of the ADA.

### 3. *Plaintiff's Claim for Emotional Distress Damages for Steven's Broken Arm*

As previously noted, a separate personal injury action regarding Steven's broken arm is pending in the New York State Court of Claims. (Dkt. Nos. 1 at ¶ 11; 5 at p. 8.) In the very unlikely event Plaintiff could be found to have a state law claim for damages for emotional harm suffered by him as a result of witnessing Steven's suffering associated with his broken arm and related isolation, that claim is logically related to Steven's personal injury claim and should be asserted in the pending personal injury action. Therefore, even if Plaintiff is found by the District Court to have federal claims surviving initial review, I recommend that the District Court, in its discretion, decline to exercise supplemental jurisdiction over Plaintiff's state law claim. *See Kolari v. New York–Presbyterian Hosp.* 455 F.3d 118, 120 (2d Cir.2006) (exercise of supplemental jurisdiction under 28 U.S.C. § 1367(a) is discretionary, not a right).

**ACCORDINGLY,** it is hereby

**ORDERED,** that Plaintiff's motion for appointment of counsel (Dkt. No. 5) is **DENIED WITHOUT PREJUDICE;** and it is hereby

**RECOMMENDED,** that the Complaint (Dkt. No. 1) be dismissed without prejudice; and it is hereby

**ORDERED,** that the Clerk serve a copy of this Order and Report–Recommendation on Plaintiff, along with a copy of the unpublished decision in *Forcucci v. Board of Educ. of Hamburg Central School Dist.,* No. 14–CV–830–A, 2014 WL 5393024 (W.D.N.Y. Oct.23, 2014) in accordance with *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72.

Filed April 17, 2015.

2015 WL 3397958

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 3397958

---

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

---

Myers v. Wollowitz, Not Reported in F.Supp. (1995)

1995 WL 236245

1995 WL 236245
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

James N. MYERS, Jr., Plaintiff,

v.

Heather WOLLOWITZ, Attorney, Defendant.

No. 95–CV–0272 (TJM) (RWS).
|
April 10, 1995.

**Attorneys and Law Firms**

James N. Myers, Jr., Troy, NY, pro se.

*DECISION AND ORDER*

McAVOY, Chief Judge.

*I. Background*

**\*1** Presently before this Court is the above-captioned plaintiff's application to proceed in forma pauperis and civil rights complaint. Plaintiff has not paid the partial filing fee required to maintain this action.

For the reasons stated below, plaintiff's complaint is dismissed pursuant to 28 U.S.C. § 1915(d) and Local Rule 5.4(a) of the General Rules of this Court as without arguable basis in law.

In his *pro se* complaint, plaintiff seems to claim that plaintiff was represented by defendant Wollowitz, a public defender for the County of Rensselaer, in a County Court proceeding. Plaintiff alleges that after a criminal proceeding in that Court, plaintiff was "sentenced to a illegal sentence." *Id.* at 2. Plaintiff contends that due to the ineffective assistance of his counsel, defendant Wollowitz, his constitutional rights were violated. For a more complete statement of plaintiff's claims, reference is made to the entire complaint filed herein.

*II. Discussion*

Consideration of whether a *pro se* plaintiff should be permitted to proceed in forma pauperis is a two-step process. First, the court must determine whether the plaintiff's economic status warrants waiver of fees and costs under 28 U.S.C. § 1915(a). If the plaintiff qualifies by economic status, the court must then consider whether the cause of action

stated in the complaint is frivolous or malicious. *Moreman v. Douglas,* 848 F.Supp. 332, 333 (N.D.N.Y.1994) (Scullin, J.); *Potnick v. Eastern State Hosp.,* 701 F.2d 243, 244 (2d Cir.1983) (per curiam).

In the present case, upon review of the plaintiff's inmate account statements, the Court has determined that plaintiff's financial status qualifies him to file or "commence" this action in forma pauperis. 28 U.S.C. § 1915(a). Turning to the second inquiry, a court may "dismiss the proceeding under 28 U.S.C. § 1915(d) if the court thereafter determines that ... the action is frivolous or malicious." *Moreman,* 848 F.Supp. at 333 (citation omitted).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Although the court has the duty to show liberality towards *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and extreme caution should be exercised in ordering sua sponte dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983), there is a responsibility on the court to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action in forma pauperis. Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915(d) is appropriate to prevent abuses of the process of the court, *Harkins v. Eldredge,* 505 F.2d 802, 804 (8th Cir.1974), as well as to discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327. *See generally Moreman,* 848 F.Supp. at 334.

**\*2** 42 U.S.C. § 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights. *See, e.g., Von Ritter v. Heald,* 91–CV–612, 1994 WL 688306, \*3, 1994 U.S.Dist. LEXIS 17698, \*8–9 (N.D.N.Y. Nov. 14, 1994) (McAvoy, C.J.). A party may not be held liable under this section unless it can be established that the defendant has acted under the color of state law. *See, e.g., Rounseville v. Zahl,* 13 F.3rd 625, 628 (2d Cir.1994) (noting state action requirement under § 1983); *Wise v. Battistoni,* 92–Civ–4288, 1992 WL 380914, \*1, 1992 U.S.Dist. LEXIS 18864, \*2–3 (S.D.N.Y. Dec. 10, 1992) (same) (citations omitted).

In the present case, the sole defendant named by plaintiff is the Rensselaer County public defender who apparently represented plaintiff in the criminal proceeding discussed in

**Myers v. Wollowitz, Not Reported in F.Supp. (1995)**

1995 WL 236245

his complaint. *See* Complaint at 2. However, "[i]t is well settled that an attorney's representation of a party to a court proceeding does not satisfy the Section 1983 requirement that the defendant is alleged to have acted under color of state law...." *Wise,* 1992 WL 380914 at *1, 1992 U.S.Dist. LEXIS 18864 at *2–3; *see also D'Ottavio v. Depetris,* 91–Civ–6133, 1991 WL 206278, *1, 1991 U.S.Dist. LEXIS 13526, *1–2 (S.D.N.Y. Sept. 26, 1991).

Since the plaintiff has not alleged any state action with respect to the Section 1983 claim presently before the Court, plaintiff's complaint, as presented to this Court, cannot be supported by any arguable basis in law and must therefore be dismissed pursuant to 28 U.S.C. § 1915(d). *Neitzke,* 490 U.S. at 328.

Accordingly, it is hereby

ORDERED, that leave to proceed or prosecute this action in forma pauperis is denied, and it is further

ORDERED, that this action is dismissed pursuant to 28 U.S.C. § 1915(d) and Local Rule 5.4(a) of the General Rules of this Court as lacking any arguable basis in law, and it is further

ORDERED, that the Clerk serve a copy of this Order on the plaintiff by regular mail.

I further certify that any appeal from this matter would not be taken in good faith pursuant to 28 U.S.C. § 1915(a).

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1995 WL 236245

---

**End of Document** © 2020 Thomson Reuters. No claim to original U.S. Government Works.

 © 2020 Thomson Reuters. No claim to original U.S. Government Works.

La Grande v. Town Of Bethlehem Police Dept., Not Reported in F.Supp.2d (2009)

2009 WL 2868231

2009 WL 2868231
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Quentin LA GRANDE, Plaintiff,

v.

TOWN OF BETHLEHEM POLICE
DEPARTMENT, et al., Defendants.

No. 1:08–CV–0738 (LEK/DRH).
|
Sept. 1, 2009.

**Attorneys and Law Firms**

Quentin La Grande, Albany, NY, pro se.

Nannette R. Kelleher, Bailey, Kelleher Law Firm, Albany, NY, for Defendants.

***DECISION AND ORDER***

LAWRENCE E. KAHN, District Judge.

**\*1** Plaintiff *pro se* Quentin La Grande ("Plaintiff" or "La Grande") commenced the instant action against Defendants Robert Helligrass [1], Stephen Kraz [2] and the Town of Bethlehem Police Department (collectively, "Defendants") pursuant to 42 U.S.C. § 1983. Complaint (Dkt. No. 1). Presently before this Court is Defendants' Motion to dismiss (Dkt. No. 13) and Plaintiff's Motion for summary judgment (Dkt. No. 12). For the following reasons, Defendants' Motion to dismiss is granted and Plaintiff's Motion for summary judgment is denied.

[1]     Incorrectly named in the Complaint as "R.J. Helliergrass." *See generally* Complaint (Dkt. No. 1).

[2]     Incorrectly named in the Complaint as "William Craz." *See generally* Complaint.

**I. BACKGROUND**

According to Plaintiff, "[o]n April 1, 2008 I was threaten by Patrol Officer William Craz. Patrol Officer called me a 'Nigger,' and also threaten to cause bodily harm to me. On April 2, 2008 I met with Seargent R.J. Helliergrass and was

interogated, and racial harrassed. On or about April 5, 10, 15, May 6, 8, 10, 15, and June 6, 2008, I have been followed by the Bethlehem Police Department." Compl. at 2. Plaintiff's jurisdictional statement asserts that the Complaint is being brought pursuant to 42 U.S.C. § 1983. *Id.* at 1.

In lieu of filing an answer, on March 11, 2009, Defendants filed the Motion to dismiss presently before the Court. Mot. to Dismiss (Dkt. No. 13). Plaintiff also filed a Motion for summary judgment on February 24, 2009, which is now before the Court. Mot. for Sum. Judg. (Dkt. No. 12).

**II. DISCUSSION**

**A. Defendants' Motion to Dismiss**

**a. Standard of Review**

In order to withstand a motion to dismiss, "a [pleading] must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* ––– U.S. ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A party must plead with such factual detail so as to sufficiently " 'nudge [ ][its] claims ... across the line from conceivable to plausible.' " *Iqbal,* 129 S.Ct. at 1950–51 (quoting *Twombly,* 550 U.S. at 570). While stating a claim does not require the recitation of detailed factual allegations, it does, however, require facts sufficient to state a claim to relief that is *prima facie* plausible. *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 555). The Court must accept the allegations in the well-pleaded complaint as true, *Albright v. Oliver,* 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), and draw all inferences in favor of the non-moving party. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1973); *Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 154 (2d Cir.2006); *King v. Am. Airlines, Inc.,* 284 F.3d 352, 356 (2d Cir.2002).

In assessing the legal sufficiency of the Complaint, the Court is mindful that La Grande is a *pro se* litigant and his submissions are subject to "less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). The Court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments they suggest.' " *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999); *see Hemphill v. New York,* 380 F.3d

680, 687 (2d Cir.2004) (" "It is well-established that 'when a plaintiff proceeds *pro se* the court is obligated to construe his pleadings liberally, particularly when they allege civil rights violations' ") (quoting *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004)). However, a plaintiff's *pro se* status "does not exempt [him] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck,* 710 F.2d 90, 92 (2d Cir.1983).

### b. Analysis

**\*2** Defendants move to dismiss Plaintiff's Complaint in its entirety pursuant to Rules 12(b)(6) of the Federal Rules of Civil Procedure.[3] Mot. to Dismiss (Dkt. No. 13) at 1. Defendants specifically argue that all causes of action against the Town of Bethlehem Police Department must be dismissed as it is not a legal entity subject to suit under 42 U.S.C. § 1983 and further that Plaintiff's entire Complaint should be dismissed for failing to state a cause of action. *Id.* at 4.

[3]  Defendants argue, alternatively, that Plaintiff's Complaint should be dismissed pursuant to 28 U.S.C. § 1915(e) and for failing to adhere to Rule 8(a) of the Federal Rules of Civil Procedure. The Court need not address these arguments as it is dismissing Plaintiff's Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

### i. Town of Bethlehem Police Department

The Town of Bethlehem moves to dismiss Plaintiff's Complaint on the ground that it is not susceptible to suit under 42 U.S.C. § 1983. While a municipality may be susceptible to suit under 42 U.S.C. § 1983, a municipal police department is not. *See Walker v. Waterbury Police Dep't.,* 08–cv–959 (JG)(AKT), 2009 U.S. Dist. LEXIS 7933, at \*5, 2009 WL 261527 (E.D.N.Y. Feb. 4, 2009). "Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued." *Id.* (citing *Hall v. City of White Plains,* 185 F.Supp.2d 293, 303 (S.D.N.Y.2002)). Accordingly, claims asserted under 42 U.S.C. § 1983 will be dismissed against a municipality's police department. *See Walker,* 2009 U.S. Dist. LEXIS 7933, at \*5, 2009 WL 261527 (internal citation omitted); *see also Baker v. Willett,* 42 F.Supp.2d 192, 198 (N.D.N.Y.1999).

Here, Plaintiff has sued the Town of Bethlehem Police Department along with two individual officers of the

department. *See generally* Compl. Plaintiff's Complaint asserts that it is brought pursuant to 42 U.S.C. § 1983 and does not provide any other basis for the claims. *Id.* at 1. Since the Bethlehem Police Department cannot be sued pursuant to 42 U.S.C. § 1983, Plaintiff's Complaint is dismissed as against the Town of Bethlehem Police Department.

Even assuming *arguendo* that Plaintiff's claims against the Town of Bethlehem Police Department can be construed as a claim against the Town of Bethlehem, Plaintiff's Complaint would still be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

In order to state a cause of action for municipal liability under 42 U.S.C. § 1983, "a plaintiff must allege that the municipality has adopted a custom or policy which is the moving force behind the [alleged constitutional violation]." *Zappala v. Albicelli,* 980 F.Supp. 635, 649 (N.D.N.Y.1997). A municipality cannot be held liable on the basis of *respondeat superior* and "a single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." *Campanaro v. City of Rome,* 999 F.Supp. 277, 281 (N.D.N.Y.1998); *see also Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993).

Plaintiff's Complaint is devoid of any allegations that the Town of Bethlehem had a policy or custom of violating constitutional rights, nor does plaintiff allege or even allude that the Town was deliberately indifferent to his constitutional rights. The complete failure to plead such warrants dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as the Complaint fails to state a cause of action for which relief can be granted under 42 U.S.C. § 1983. *See Campanaro,* 999 F.Supp. at 281; *Dwares,* 985 F.2d at 100.

### ii. Defendants Kraz and Helligrass

**\*3** La Grande's Complaint alleges that between April and June 2008, he was "racially harassed," "threatened" and "interrogated" by Defendants Kraz and Helligrass, two officers of the Bethlehem Police Department. Compl. at 2. Specifically, La Grande alleges that on multiple occasions the officers addressed him with a racial epithet and followed him through town. *Id.* It is well settled in this Circuit that "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse." *Murray v. Pataki,* No. 9:03–cv–1263, 2007 U.S. Dist. LEXIS 26959, at \*22, 2007 WL 956941 (N.D.N.Y. Mar. 29, 2007) (Kahn, J.) (quoting *Gill v. Hoadley,* 261 F.Supp.2d 113, 129 (N.D.N.Y.2003)) (collecting cases).

"[V]erbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Murray,* 2007 U.S. Dist. LEXIS, at \* 22 (quoting *Moncrieffe v. Witbeck,* 2000 U.S. Dist. LEXIS, at \*3, 2000 WL 949457 (N.D.N.Y. June 29, 2000)); *see also Zeno v. Cropper,* 650 F.Supp. 138, 141 (S.D.N.Y.1986) ("vile and abusive language ... no matter how abhorrent or reprehensible cannot form the basis for a § 1983 claim) (internal citation and quotation omitted). Further, "threats do not amount to violations of constitutional rights." *Murray,* 2007 U.S. Dist. LEXIS, at \*23 (quoting *Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995)).

In this case, Plaintiff's claim for verbal harassment in the form of racial slurs and threats is not actionable under § 1983 and, therefore, fails to state a claim entitled to relief. Compl. at 2.

## B. Plaintiff's Motion for Summary Judgment

Even assuming *arguendo* that this Court did not grant Defendants' Motion to dismiss, Plaintiff's Motion for summary judgment would still be denied. Under the Local Rules, *"all* motions ... require a memorandum of law, supporting affidavit, and proof of service on all the parties." N.D.N.Y. L.R. 7.1(a) (emphasis added). "All memoranda of law shall contain a table of contents and, wherever possible, parallel citations." *Id.* at 7 .1(a)(1). Further "[a]ny motion for summary judgment shall contain a Statement of Material Facts ... *Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion." Id.* at 7 .1(a)(3) (emphasis in original).

Here, not only did the Plaintiff fail to submit a memoranda of law in support of his Motion for summary judgment and an affidavit but he also failed to submit a Statement of Material Facts. In fact, in his Motion for summary judgment filed on February 24, 2009, Plaintiff explicitly stated, "I will provide this Court with a 'Law Memorandum' in support of my motion; such will contain applicable law, and case law. I will submit this to the Court on or before March 6, 2009." Mot. for Sum. Judg. at 1. To date, this Court has not received said memorandum of law. While this Court recognizes Plaintiff's *pro se* status, he has failed to comply with *all* of the Local Rules. *See Traguth v. Zuck,* 710 F.2d 90, 92 (2d Cir.1983) (a plaintiff's *pro se* status "does not exempt [him] from compliance with relevant rules of procedural and substantive law"). Accordingly, Plaintiff's Motion for summary judgment

is denied for failing to comply with the relevant rules of procedure. *See, e.g.,* N.D.N.Y. L.R. 7.1(a), 7.1(a)(3).

## C. Amended Complaint

**\*4** Plaintiff also moves to amend his Complaint. Response (Dkt. No. 27). While *pro se* litigants are generally afforded wide latitude and an opportunity to amend, a District Court need not permit an amendment to a Complaint where it would be futile. *See Forman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (holding that although leave to amend should be freely given where justice so requires, a district court need not grant leave if amendment would be futile); *Acito v. Imcera Group, Inc.,* 47 F.3d 47, 55 (2d Cir.1995).

Here, Plaintiff's Complaint does not state any viable causes of action under 42 U.S.C. § 1983. Further, Plaintiffs Complaint does not state which, if any, of his constitutional rights were violated by Defendants nor does it plead any facts to establish municipal liability. Plaintiff's Complaint also does not plead any facts supporting his allegations that he was "racially harassed," "threatened" or "interrogated." Since, as the Court discussed above, none of the complained of actions provides the basis for a cognizable cause of action, leave to cure these defects would be futile. These deficiencies may have been excusable, albeit not cureable, had this Court not previously informed Plaintiff of the requirements for pleading a cause of action under 42 U.S.C. § 1983 against a municipality. *See La Grande v. Albany Police Dep't,* 1:07–CV–757 (Dkt. No. 4). [4] Given that leave to amend would be futile, this Court denies Plaintiff's request.

[4]    Notably, Plaintiff has also filed numerous Complaints in the Northern District, many of which include assertions of civil rights violations and racial discrimination or harassment, wherein Plaintiff has been granted leave to amend his complaints. Plaintiff has filed eleven suits in the Northern District since 2000, including the instant matter. In fact, on May 12, 2008, Chief United States District Judge Norman A. Mordue entered an order enjoining Plaintiff from filing any further actions or pleadings in this district without the prior permission of the Chief Judge. Dkt. No. 6. This Order was entered based on a record of vexatious and frivolous pleadings previously filed by La Grande.

2009 WL 2868231

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that Defendants' Motion to dismiss (Dkt. No. 13) is **GRANTED in its entirety;** and it is further

**ORDERED,** that Plaintiff's request to amend his Complaint (Dkt. No. 27) is **DENIED;** and it is further

**ORDERED,** that Plaintiff's Motion for summary judgment (Dkt. No. 12) is **DENIED in its entirety;** and it is further

**ORDERED,** that the Clerk serve a copy of this Decision and Order on all parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 2868231

---

End of Document

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 4052286
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Sylvia JENKINS, Plaintiff,
v.
Mr. LIADKA, Syracuse Police Officer; Mr. Sands,
Syracuse Police Officer; John Doe, Syracuse Police
Officer; and Syracuse Police Dep't, Defendants.

No. 5:10–CV–1223 (GTS/DEP).
|
Sept. 13, 2012.

**Attorneys and Law Firms**

Sylvia Jenkins, Syracuse, NY, pro se.

Hon. Mary Anne Dougherty, Corporation Counsel for City of Syracuse, Catherine Ena Carnrike, Esq., Assistant Corporation Counsel, of Counsel, Syracuse, NY, for Defendants.

***MEMORANDUM–DECISION and ORDER***

GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this *pro se* civil rights action filed by Sylvia Jenkins ("Plaintiff") against Mr. Liadka, Mr. Sands, John Doe, and Syracuse Police Department ("Defendants"), is Defendants' motion to dismiss Plaintiff's Complaint for insufficient service of process pursuant to Fed.R.Civ.P. 12(b)(5) and/or for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 13.) For the reasons set forth below, Defendants' motion is granted in part and denied in part.

**I. RELEVANT BACKGROUND**

**A. Plaintiff's Complaint**
Generally, construed with the utmost of special liberality, Plaintiff's Complaint asserts three claims against Defendants arising from an investigatory stop in September 2010, in Syracuse, New York: (1) a claim that three Syracuse Police Officers unreasonably searched her in violation of the Fourth Amendment; (2) a claim that they unlawfully seized, and failed to return, her personal property in violation of the

Fourth, Fifth, and/or Fourteenth Amendments; and (3) a claim that they subjected her to excessive force in violation of the Fourth Amendment. (*See generally* Dkt. No. 1 [Plf.'s Compl].)

Generally, in support of these claims, Plaintiff alleges as follows: (1) on the evening of September 9, 2010, she was stopped on Butternut Street in the City of Syracuse by two officers, who questioned her regarding a call they had received; (2) when she told the two police officers that she did not know what they were talking about and "attempted to go on about [her] business," the officers became "uptight, rude, [and] abnormal in their conversations [and] behavior," and threatened her; (3) the officers then proceeded to conduct a search of "all [of Plaintiff and her] personal property," and, in the process of doing so, twisted her arm and forced her onto the front of their police vehicle; (4) a third police officer arrived, and she was assaulted by all three officers (hereinafter "Defendants"), who hit her on the back and threw her onto the police vehicle; (5) following the deprivation on September 9, 2010, Defendants denied her a post-deprivation remedy through a combination of threats, intimidation and/or nonresponsiveness; and (6) Defendants took these actions against her intentionally because they did not personally like her, given her previous interactions with the Syracuse Police Department. (*Id.*)

Plaintiff further alleges that, as a result of this incident, she suffered various injuries and losses, including (1) a "tremendous setback in already trying to recover in an [sic] grave overall manner of my life [and] lifestyle involving officials internally [and] externally," (2) head and back pain, and mental suffering, (3) loss of personal property, and, (4) loss of employment. (*Id.*) As relief, Plaintiff requests an award of twelve thousand dollars ($12,000) in damages. (*Id.* at ¶ 6.)

Familiarity with the remaining factual allegations supporting Plaintiff's three claims is assumed in this Decision and Order, which is intended primarily for review by the parties. (*See generally* Dkt. No. 1.)

**B. Defendants' Motion**
**\*2** On May 6, 2011, Defendants filed a motion to dismiss. (Dkt. No. 13, Attach 2.) Generally, in support of their motion, Defendants assert the following two arguments: (1) because the Complaint was not served within the time allowed by Fed.R.Civ.P. 4 or Local Rule 4.1 of the Local Rules of Practice for this Court, the Court lacks jurisdiction over Defendants in accordance with Fed.R.Civ.P. 4; and (2) the Complaint fails

to state a claim upon which relief can be granted, because (a) the Complaint fails to identify what constitutional rights Plaintiff is attempting to vindicate, (b) even if the Complaint has sufficiently identified a constitutional violation, the Complaint fails to allege facts plausibly suggesting the personal involvement of the individual Defendants in any such constitutional violation, (c) the City of Syracuse Police Department does not have the legal capacity to be sued, (d) even if Plaintiff's Complaint can be liberally construed as attempting to assert a claim against the City of Syracuse, the Complaint fails to allege facts plausibly suggesting that the individual Defendants' actions the result of a city policy or custom sufficient to confer municipal liability upon the City, (e) the Fifth Amendment does not govern a plaintiff's deprivation-of-property claim against state actors, (f) the Complaint fails to allege facts plausibly suggesting that force was used or that if force was used it was excessive for purposes of a Fourth Amendment claim, and (g) based on Plaintiff's factual allegations, Defendants Liadka and Sands are protected from liability as a matter of law by the doctrine of qualified immunity. (*See generally* Dkt. No. 13, Attach. 2.)

On June 2, 2011, Plaintiff filed a response to Defendants' motion. Generally, Plaintiff's response, which is handwritten and three pages in length, states that she "definitely oppose[s] [Defendants'] request" for the dismissal of her Complaint. (*See generally* Dkt. No. 17.) However, Plaintiff's response does not address the legal arguments asserted by Defendants for the dismissal of Plaintiff's Complaint. (*Compare* Dkt. No. 17 *with* Dkt. No. 13, Attach. 2.) Although Plaintiff's response was submitted two days after the expiration of the responsedeadline, the Court has accepted it, out of an extension of special solicitude to her as a *pro se* civil rights litigant.

In addition, Plaintiff has filed three letters to the Court on the following dates: July 6, 2011, August 22, 2011, and January 13, 2012. (Dkt. No. 18–20.) Generally, these letters contain assertions that Plaintiff believes that the police are treating her, treating her negatively, and responding unsatisfactorily to her telephone calls. (*Id.*) To the extent that these three letters are intended to constitute papers in opposition to Defendants' motion, the Court will not consider them, because (1) they are not responsive to the motion, and/or (2) they were not submitted in a timely manner. Moreover, to the extent that these three letters are intended to constitute a request for relief, the Court will not consider them, because do not state the relief sought, state with particularity the grounds for seeking the order, and attach a memorandum of law and

affidavit, as required by Fed.R.Civ.P. 7(b) and Local Rule 7.1 of the Local Rules of Practice for this Court.

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Motions to Dismiss for Insufficient Service of Process

**\*3** Rule 4(m) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court-on motion or its own after notice to the plaintiff-must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m).

The Local Rules of Practice for this Court shorten the service requirements under Fed.R.Civ.P. 4. Specifically, Local Rule 4.1(b) requires "service of process upon all defendants within sixty (60) days of the filing of the complaint. This expedited service is necessary to ensure adequate time for pretrial discovery and motion practice. In no event shall service of process be completed after the time specified in Fed.R.Civ.P. 4." N.D.N.Y. L.R. 4.1(b).

### B. Legal Standard Governing Motions to Dismiss for Failure to State Claim

It has long been understood that a defendant may base a motion to dismiss for failure to state a claim upon which relief can be granted on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review).

Because such motions are often based on the first ground, a few words on that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading

contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed.R.Civ.P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F.Supp.2d at 212, n. 20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n. 17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson,* 549 F.Supp.2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n. 32 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12–61 (3d ed.2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp .2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–52, 173 L.Ed.2d 868 (2009).

**\*4** Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turning on the *conceivability* of an actionable claim,

the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id* . at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*[1]

[1]     It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Twombly*-that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F.Supp.2d at 214 & n. 35 (explaining holding in *Erickson* ).

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not show[n]-that the pleader is entitled to relief." *Iqbal,* 129 S.Ct. at 1950 [internal quotation marks and

citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.,* it "does not impose a probability requirement." *Twombly,* 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal,* 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12.[2] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[3] Stated more simply, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28.

---

[2] See *Vega v. Artus,* 610 F.Supp.2d 185, 196 & nn. 8–9 (N.D.N . Y.2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

[3] See *Vega,* 610 F.Supp.2d at 196, n. 10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

**\*5** Finally, a few words are appropriate regarding what documents are considered on a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). The court may consider the following documents without triggering the summary judgment standard: "(1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference into the complaint (and provided by the parties),

(3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case." *Planck v. Schenectady Cnty.,* 12–CV–0336, 2012 WL 1977972, at \*5 (N.D.N.Y. June 1, 2012) (Suddaby, J.). Moreover, "a pro se plaintiff's papers in response to a defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations of [her] complaint-to the extent those papers are consistent with the allegations in the complaint." *Planck,* 2012 WL 1977972, at \*5.

**C. Legal Standard Governing Unopposed Motions**

In this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden. See N.D.N.Y. L.R. 7.1(b) (3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein...."); *Rusyniak v. Gensini,* 07–CV–0279, 2009 WL 3672105, at \*1, n. 1 (N.D.N.Y.Oct.30, 2009) (Suddaby, J.) (collecting cases); *Este–Green v. Astrue,* 09–CV–0722, 2009 WL 2473509, at \*2 & n. 3 (N.D.N.Y. Aug.7, 2009) (Suddaby, J.) (collecting cases).

**D. Legal Standards Governing Plaintiff's Claims**

Because the Court has, in its Decision and Order of March 7, 2011, addressed the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not again recite, in their entirety, those legal standards in this Decision and Order, 9 which is intended primarily for review by the parties. (*See generally* Dkt. No. 5 [Decision and Order].)

**E. Legal Standards Governing Defendants' Defenses**

**1. Defense of Lack of Separate Identity**

"Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality, and therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dept.,* 224 F.Supp.2d 463, 477 (E.D.N.Y.2002). "Pursuant to Fed.R.Civ.P. 17, New York governs the capacity of

a police department to sue or be sued. In New York, police department like the defendant, which are merely administrative arms of a municipal corporation, do not have a legal identity separate and apart from the town." *Loria v. Irondequoit* 775 F.Supp. 599, 606 (W.D.N.Y.1990). While a municipality can sue or be sued, the police department, which does not exist separate from that municipality, can not. *Baker v. Willett,* 42 F.Supp.2d 192, 198 (N.D.N.Y.1999).

### 2. Defense of Limited Municipal Liability

**\*6** It is well established that "[a] municipality may not be held liable in a Section 1983 action for the conduct of a lower-echelon employee solely on the basis of *respondeat superior.*"[4] "Rather, to establish municipal liability under § 1983 for unconstitutional acts by a municipality's employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy."[5] "Thus, to hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to ... prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."[6]

[4]    *Powell v. Bucci,* 04–CV–1192, 2005 WL 3244193, at \*5 (N.D.N.Y. Nov.30, 2005) (McAvoy, J.); *see also Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."); *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) ("[A] [municipality] may not be held for the actions of its employees or agents under a theory of *respondeat superior."* ).

[5]    *Powell,* 2005 WL 3244193, at \*5; *Monell,* 436 U.S. at 690–691 ("[L]ocal governments ... may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."); *Batista,* 702 F.2d at 397 ("[M]unicipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to a governmental custom, policy, ordinance, regulation, or decision."); *Smith v. City of New York,* 290 F.Supp.2d 317, 321 (S.D.N.Y.2003) ("In order to establish the liability of [municipal] defendants in an action under §

1983 for unconstitutional acts by [its] employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy.").

[6]    *Batista,* 702 F.2d at 397, *accord, Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995), *McKeon v. Daley,* 101 F.Supp.2d 79, 92 (N.D.N.Y.2000) (Hurd, J.), *Merriman v. Town of Colonie, N.Y.,* 934 F.Supp. 501, 508 (N.D.N.Y.1996) (Homer, M.J.); *Douglas v. Cnty. of Tompkins,* 90–CV–0841, 1995 WL 105993, at \*12 (N.D.N.Y. March 2, 1995) (McCurn, J.), *Keyes v. Cnty. of Albany,* 594 F.Supp. 1147, 1156 (N.D.N.Y.1984) (Miner, J.).

With regard to the first element (the existence of a policy or custom), a "[p]laintiff may establish the 'policy, custom or practice' requirement by demonstrating: (1) a formal policy officially endorsed by the municipality ...; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question ...; (3) a practice so consistent and widespread that it constitutes a 'custom or usage' sufficient to impute constructive knowledge to the practice of policymaking officials ...; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to 'deliberate indifference' to the rights of those who come in contact with the municipal employees...."[7] With regard to the second element (causation), a plaintiff must show "a direct causal link" or "an affirmative link" between the municipal policy or custom and the alleged constitutional deprivation (i.e., that the policy or custom was the "moving force" behind the deprivation).[8]

[7]    *Dorsett–Felicelli, Inc.,* 371 F.Supp.2d 183, 194 (N.D.N.Y.2005) (Kahn, J.) (citing three Supreme Court cases for these four ways), *accord, Dunbar v. Cnty. of Saratoga,* 358 F.Supp.2d 115, 133–134 (N.D.N.Y.2005) (Munson, J.); *see also Clayton v. City of Kingston,* 44 F.Supp.2d 177, 183 (N.D.N.Y.1999) (McAvoy, J.) (transposing order of second and third ways, and citing five more Supreme Court cases).

[8]    *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) ("[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional

deprivation."); *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823, n. 8, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) ("The fact that municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a constitutional violation. There must at least be an affirmative link between [for example] the training inadequacies alleged, and the particular constitutional violation at issue."); *Monell,* 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983. Since this case unquestionably involves official policy as the moving force of the constitutional violation [at issue] ... we must reverse the judgment below."); *Vippolis v. Village of Haverstraw,* 768 F.2d 40, 44 (2d Cir.1985) ("A plaintiff who seeks to hold a municipality liable in damages under section 1983 must prove that ... an official policy or custom [was] the cause of the deprivation of constitutional rights.... [T]he plaintiff must establish a causal connection-an affirmative link-between the policy and the deprivation of his constitutional rights.") [internal quotation marks and citation omitted]; *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiff's injury, *Monell* prohibits a finding of liability against the City."); *Powell,* 2005 WL 3244193, at *5 ("Ultimately, the plaintiff must demonstrate a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation.") [internal quotation marks and citation omitted].

### 3. Defense of Qualified Immunity

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Williams v. Smith,* 781 F.2d 319, 322 (2d Cir.1986) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 815 [1982] ). As a result, a qualified immunity inquiry in a civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2) "whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation confronted." *Sira v. Morton,* 380 F.3d 57, 68–69 (2d

Cir.2004) [citations omitted], *accord, Higazy v. Templeton,* 505 F.3d 161, 169, n. 8 (2d Cir.2007) [citations omitted].

In determining the second issue (i.e., whether it would be clear to a reasonable official that his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

**\*7** *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991) [citations omitted], *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992).[9] "As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton,* 505 F.3d 161, 169–70 (2d Cir.2007) [citations omitted].[10] This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of defendant's actions]." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).[11] As the Supreme Court has explained,

[9]

> *See also Pena v. DePrisco,* 432 F.3d 98, 115 (2d Cir.2005); *Clue v. Johnson,* 179 F.3d 57, 61 (2d Cir.1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir.1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir.1996); *Rodriguez v. Phillips,* 66 F.3d 470, 476 (2d Cir.1995); *Prue v. City of Syracuse,* 26 F.3d 14, 17–18 (2d Cir.1994); *Calhoun v. New York State Division of Parole,* 999 F.2d 647, 654 (2d Cir.1993).

[10]

> *See also Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)

("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.' ") [citation omitted]; *Davis v. Scherer,* 468 U.S. 183, 190, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

11    *See also Malsh v. Correctional Officer Austin,* 901 F.Supp. 757, 764 (S.D.N.Y.1995) [citing cases]; *Ramirez v. Holmes,* 921 F.Supp. 204, 211 (S.D.N.Y.1996).

[T]he qualified immunity defense ... provides ample protection to all but the plainly incompetent or those who knowingly violate the law.... Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.

*Malley,* 475 U.S. at 341.[12]

12    *See also Hunter v. Bryant,* 502 U.S. 224, 299, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") [internal quotation marks and citation omitted].

## III. ANALYSIS

### A. Whether Plaintiff's Complaint Should Be Dismissed for Failure to Serve Process in Timely Manner

After carefully considering the matter, the Court must answer this question in the negative. By Defendants' own calculations, Plaintiff's Complaint was served on April 18, 2011–a mere 42 days after the Court granted Plaintiff's motion to proceed *in forma pauperis,* approved the filing of her Complaint, and directed the Clerk of the Court to issue summonses and forward them with the Complaint to the United States Marshal's Service, for service on Defendants. (Dkt. No. 5 [Decision and Order filed March 7, 2011].) Indeed, Defendants acknowledge that Plaintiff completed the Civil Summonses and USM285 form, and returned them to the Clerk's Office (so that the Clerk's Office could forward them to the U.S. Marshal's Service for service of Plaintiff's Complaint) less than eight days after receiving them from the Clerk's Office. (Dkt. No. 13, Attach. 1, at ¶¶ 6–7; Dkt. No. 13, Attach. 2, at 9 [attaching page "8" of Defs.' Memo. of Law]; *see also* Dkt. Nos. 6, 8.) After that point in time, service was largely if not entirely outside of Plaintiff's control.

Under the circumstances, the Court finds that good cause exists to extend the deadline for service by 42 days. The Court notes that a contrary conclusion (e.g., a conclusion that Plaintiff had to serve her Complaint by December 13, 2010 pursuant to Local Rule 4.1, or even February 11, 2011 pursuant to Fed.R.Civ.P. 4) would render meaningless the Court's directive that the Clerk of the Court, on March 5, 2011, to take sufficient action to enable the United States Marshal's Service to effect service for Plaintiff.

### B. Whether Plaintiff's Complaint Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted

### 1. Whether Plaintiff's Complaint Should Be Dismissed for Failing to Sufficiently Identify What Constitutional Rights She Is Attempting to Vindicate

**\*8**  After carefully considering the matter, the Court must answer this question also in the negative. In construing the pleadings of a *pro se* civil rights litigant in this Circuit, a district court's imagination should be limited only by the plaintiff's factual allegations, not by the legal claims set out in his or her pleadings. *See Phillips v. Girdich,* 408 F.3d 124, 130 (2d Cir.2005) ("We leave it for the district court to determine what other claims, if any, Phillips has raised. In so doing, the court's imagination should be limited only by Phillips' factual allegations, not by the legal claims set out in his pleadings.").

Here, based on Plaintiff's (albeit scant and confused) factual allegations, the Court can imagine that she is attempting to assert the following three claims: (1) a claim of an unreasonable search under the Fourth Amendment; (2) a claim of an unlawful seizure of, and failure to return, her personal property under the Fourth, Fifth and/or Fourteenth

Amendments; and (3) a claim of excessive force under the Fourth Amendment.

### 2. Whether Plaintiff's Claims Against the Individual Defendants Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Their Personal Involvement in the Constitutional Violations Alleged

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 13 [attaching page "12" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. *See, supra,* Part III.C. of this Decision and Order. [13] Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, and finally, even when construed with the utmost of special liberality, the Complaint does not identify the precise location of the incident, which officers were responsible for violating her rights, how she suffered the head injury she alleges, what property was taken from her, and how Defendants frustrated her efforts to recover that property. *See Vogeler v. Colbath,* 04–CV–6071, 2005 U.S. Dist. LEXIS 44658, at *29, 2005 WL 2482549 (S.D.N.Y. Oct. 6, 2005) ("Plaintiffs must also allege ... the personal involvement of the Defendant in the actions underlying their claim."). [14]

[13]    Under the circumstances, the Court finds that Plaintiff had sufficient notice of the consequences of failing to respond to the arguments asserted in Defendants' motion. For example, on October 14, 2010, Plaintiff was given a courtesy copy of the District's *Pro Se* Handbook and a courtesy copy of the Local Rules of Practice for the Northern District of New York. (Dkt. No. 4.) In addition, on May 6, 2011, Defendants advised Plaintiff of her need to respond to their arguments. (Dkt. No. 15.) Also, Plaintiff had extensive experience as a *pro se* civil rights litigant in this District, before responding to the motion in question. *See, infra,* Part III.D. of this Decision and Order.

[14]    Indeed, the Court notes that one of the officers that Plaintiff lists in her Complaint has not been identified. In a prior decision by the Court, Plaintiff was ordered to take reasonable steps to ascertain the identity of the unnamed officer, immediately notify the Court, amend her complaint to include the identity of the third Defendant, and also to have that officer served. (Dkt. No. 5, at 14.) Because Plaintiff has not done so, her alleged physical injuries remain attributable to an unidentified person.

For all of these alternative reasons, Plaintiff's claims against the individual Defendants are dismissed.

### 3. Whether the Syracuse Police Department Should Be Dismissed as a Defendant

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach 2, at 13.) The Court would add only the following three brief points.

**\*9** First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, and finally, "as Plaintiff has been told several times, under New York State law, departments, like the Onondaga County Sheriff's Department, that are merely administrative arms of a municipality, do not have a legal identity separate from the municipality and may not sue or be sued." *Jenkins v. Onondaga Cnty. Sheriff's Dep't,* 12–CV–0855, Report–Recommendation, at 5 (N.D.N.Y. filed June 28, 2012) (Baxter, J.) (citing *Hayes v. Cnty. of Sullivan,* 07–CV–0667, 2012 WL 1129373, at *24 [S.D.N.Y. March 30, 2012] ). Because the Syracuse Police Department is merely an administrative arm of the City of Syracuse, it is not a proper defendant in this case. The real party in interest is the City of Syracuse itself.

For all of these alternative reasons, the Syracuse Police Department dismissed as a Defendant.

### 4. Whether, Even if the City of Syracuse Were Substituted for the Police Department, Plaintiff's Claims Against the City Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Municipal Liability

Jenkins v. Liadka, Not Reported in F.Supp.2d (2012)
Case 5:20-cv-01052-MAD-TWD    Document 5    Filed 11/25/20    Page 35 of 46
2012 WL 4052286

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 14–15 [attaching pages "13" and "14" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, even when it is construed with the utmost of special liberality, Plaintiff's Complaint has not alleged facts plausibly suggesting a widespread policy or custom promulgated by the municipal policy maker necessary to hold the City liable for her injuries. As indicated above in Part II.E.2. of this Decision and Order, Plaintiff must allege facts plausibly suggesting that the municipality "has adopted a 'custom' or 'policy' which is the 'moving force' behind [the violation]." *Zappala v. Albicelli,* 980 F.Supp. 635, 639 (N.D.N.Y.1997) (Scullin, J.) (citing, *inter alia, Monell v. Dept. of Soc. Servs. of City of New York,* 436 U.S. 658, 689 [1978] ). However, Plaintiff has not alleged *any* official policy or custom adopted by the City of Syracuse or its Police Department,[15] let alone one responsible for the alleged injuries she received. Because *Monell* prohibits the finding of liability against a City when there is no causal connection between a municipal policy and a resulting injury, Syracuse City Police Department cannot be responsible for Plaintiff's alleged injuries. *Monell,* 436 U.S. at 692. As a result, the City of Syracuse cannot be maintained as a Defendant in this action, and Plaintiff's Section 1983 claims against it are dismissed.

[15]    In addition to not alleging facts plausibly suggesting the existence of a department-wide policy or custom, Plaintiff has not alleged facts plausibly suggesting that Officers Liadka, Sands, and the unnamed officer created or promulgated that policy, or even that they were final policymakers. "A municipal official that exercises discretion, whether it be in a constitutional or unconstitutional manner, in an area of which that official is not the final policymaker, cannot, by itself, establish municipal liability." *Clayton v. City of Kingston,* 44 F.Supp.2d 177, 184 (N.D.N.Y.1999) (McAvoy, C.J.).

**\*10** For all of these reasons, Plaintiff's claims against the City of Syracuse Police Department and/or the City of Syracuse are dismissed on this alternative ground.

### 5. Whether, in the Alternative, Plaintiff's Deprivation–of–Property Claim Should Be Dismissed to the Extent It Is Grounded on the Fifth Amendment

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 16–17 [attaching pages "15" and "16" of Defs.' Memo. of Law].) The Court would add only the following four brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, a takings claim is not ripe where a state remedy is potentially available. *Vandor Inc. v. Militello,* 301 F.3d 37, 39 (2d. Cir.2002). As the Supreme Court has explained,

> An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.

*Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Police are not required to provide the owner with notice for state-law remedies, which are "established by published, generally available state statutes and case law." *City of W. Covina v. Perkins,* 525 U.S. 234, 240–241, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999). "Once the property owner is informed that his property has been seized,

he can turn to these public sources to learn about the remedial procedures that are available to him. The City need not take other steps to inform him of his options." *City of W. Covina,* 525 U.S. at 241. Here, Plaintiff has not alleged facts plausibly suggesting that she attempted to recover her property in the proper manner (or even what property was taken). Fourth, and, finally, Plaintiff does not allege facts suggesting that her property was taken for public use in an unconstitutional manner that would require her to be paid just compensation. Instead, Plaintiff alleges that, after she attempted to escape from their investigation and was restrained by officers, she was searched and had property taken from her.

For all of these alternative reasons, Plaintiff's deprivation-of-property claim is dismissed to the extent that it is grounded on the Fifth Amendment.

**6. Whether, in the Alternative, Plaintiff's Excessive Force Claim Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Either that Force Was Used or that Any Such Force Was Excessive**

**\*11** After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 17–18 [attaching pages "16" and "17" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, as stated in the Court's Decision and Order of March 7, 2011, in evaluating a Fourth Amendment excessive-force claim, "courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." (Dkt. No. 5, at 13.) [16] Here, Plaintiff alleges the following facts, which could be construed as plausibly suggesting that, at the time the incident occurred, she had given Defendants probable cause to use the force at issue against her: (1) Defendants were dispatched to that location regarding a problem; (2) Defendants specifically chose to question Plaintiff about the incident; (3) Plaintiff was attempting to get away from Defendant when they were attempting to question her; (4) she acted in such a way as to cause Defendants to become "worked up"; (5) it became

necessary for a third unnamed officer to step in and assist Defendants Sands and Liadka in controlling Plaintiff. (Dkt. No. 1, at ¶ 4 & Attachment.) Simply stated, it is plausible, based on Plaintiff's factual allegations, that the amount of force used by the officers to pull her hands behind her back and detain her was necessary to keep her from getting away and "going about [her] business." (*Id.* at ¶ 4.) It is important to note that Plaintiff does not allege facts plausibly suggesting any physical injury other than vague "head & back pains." (*Id.* at ¶ 5.) [17]

[16]    More specifically, the standard governing constitutional excessive-force claims against government officials in "the course of making an arrest, investigatory stop, or other seizure" of a person is the Fourth Amendment's objective reasonableness standard. *Graham v. Connor,* 490 U.S. 386, 388, 391, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Pursuant to this standard, three elements must be objectively examined to determine whether excessive force was used for Fourth Amendment violations: "(1) the need for the application of force; (2) the relationship between that need and the amount of force that was used; and (3) the extent of the injury inflicted." *Graham,* 490 U.S. at 390, 397. It is essential to look at surrounding circumstances in each case, and analyze "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The "extent of intrusion on the suspect's rights" must be balanced against the "importance of governmental interests." *Tennessee v. Garner,* 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

[17]    More specifically, Plaintiff's Complaint does not allege facts plausibly suggesting that her injuries were significant, how long the pain lasted, or that medical treatment was necessary (or even sought) following the incident. *See Smith v. City of New York,* 04–CV–3286, 2010 U.S. Dist. LEXIS 88774, at \*27, 2010 WL 3397683 (S.D.N.Y. Aug. 27, 2010) ("Courts in this Circuit have consistently held that an injury is de minimis when it is temporary and/or minor in severity.") (collecting cases).

For all of these reasons, Plaintiff's excessive force claim is dismissed on this alternative ground.

**7. Whether, in the Alternative, Plaintiff's Claims Against the Individual Defendants Should Be Dismissed Because, Based on the Factual Allegations of the Complaint, Defendants Are Protected from Liability as a Matter of Law by the Doctrine of Qualified Immunity**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 19–20 [attaching pages "18" and "19" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would the reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, as indicated above in Part I.E.3. of this Decision and Order, "[u]nder federal law, a police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Jenkins v. City of New York,* 478 F.3d 76, 87 (2d Cir.2007) (internal quotations and other citations omitted). Here, based on Plaintiff's own factual allegations, it is plausible that police officers of reasonable competence could disagree as to whether Defendants' actions were unlawful (e.g., given their need to question her, and her attempt to flee the scene).

**\*12** For all of these reasons, Plaintiff's claims against the individual Defendants are dismissed on this alternative ground.

**C. Whether the Court Should Give Plaintiff an Opportunity to File an Amended Complaint Before Dismissing This Action**

Generally, when a district court dismisses a *pro se* action, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank,* 171 F.3d 794, 796 (2d Cir.1999). However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. As the Second Circuit has explained, "[w]here it appears that

granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) (citations omitted), *accord, Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *see also Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (denial not abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted); *Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990) ("[W]here ... there is no merit in the proposed amendments, leave to amend should be denied").

This rule applies even to *pro se* plaintiffs. *See, e.g., Cuoco,* 222 F.3d at 103; *Brown,* 1997 WL 599355, at \*1. As explained above in Part II.B. of this Decision and Order, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12; rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.

Here, the Court has some difficulty finding that the referenced defect in Plaintiff's Complaint is merely formal. Nor is the Court confident that granting Plaintiff an opportunity to amend her Complaint will be productive. The Court notes that the errors made by Plaintiff in this action were previously made by her, and not corrected, on many occasions. Plaintiff has been ordered numerous times to file amended complaints at risk of dismissal of her case. [18] Of the seven times an amended complaint was required, Plaintiff submitted an amended complaint only three times. [19] Two of these were one page documents which did not state a claim upon which relief could be granted and were rejected by the Court, and the other did not correct the deficiencies of the original complaint. [20] Plaintiff did not comply with the Court's order

to amend her complaint at all on four occasions.[21] In one case, Plaintiff was given an additional thirty day period to file her amended complaint after she failed to do so within the first 30 day period granted to her. *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006). Similarly, in a separate case, Plaintiff did not follow up on her original claim because she failed to appear for three hearings the Court rescheduled despite warnings of her need to comply with the Court Orders. *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005). All seven of these cases resulted in dismissal, most for failure to prosecute, failure to comply with Court Orders, or failure to state a claim. Five of Plaintiff's cases were not given leave to amend because granting such leniency would have been futile.[22]

[18]   *Jenkins v. Comm'r of Soc. Sec. Admin.,* 06–CV–0059 (N.D.N.Y. filed Jan 17, 2006); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins v. Onondaga Sheriff's Dep't.,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Sheriff's Dep't.,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 12–CV–0855 (N.D.N.Y. filed May 23, 2012).

[19]   *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins v. Comm'r of Soc. Sec. Admin.,* 06–CV–0059 (N.D.N.Y. filed Jan 17, 2006); *Jenkins v. Sheriff's Dep't.,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007).

[20]   *Id.*

[21]   *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Onondaga Sheriff's Dep't.,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 12–CV–0855 (N.D.N.Y. filed May 23, 2012)

[22]   *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167 (N.D.N.Y. filed Sept. 29, 2006); *Jenkins v. Sheriff's*

*Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. USA,* 09–CV0603 (N.D.N.Y. filed May 11, 2009); *Jenkins v. Rice,* 11–CV–1037 (N.D.N.Y. filed Aug. 31, 2011).

**\*13** However, the Court is mindful of the special solicitude that should be afforded to *pro se* civil rights litigants. For these reasons, before the Court dismisses Plaintiff's action, the Court will afford her an opportunity to file an Amended Complaint correcting the above-described pleading defects within thirty (30) days from the date of the filing of this Decision and Order.

If Plaintiff submits an Amended Complaint, she is encouraged to describe the acts of misconduct alleged therein and identify each individual who participated in the misconduct. Moreover, Plaintiff is advised that her Amended Complaint must be a complete pleading that will replace and supersede her original Complaint in its entirety. Finally, Plaintiff is cautioned that, if she fails to file, in a timely fashion, an Amended Complaint that successfully states a claim upon which relief can be granted, her action will be dismissed with prejudice without further Order of the Court.

### D. Whether This Case Should Be Forwarded to the Chief Judge with a Recommendation that an Anti–Filing Injunction Order Be Issued Against Plaintiff

A review of Plaintiff's litigation history on Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service reveals that, before filing the current action on October 13, 2010, she filed thirteen *pro se* civil actions in this District alone-twelve of which have been dismissed and the thirteen of which is being considered for dismissal.[23] A review of Plaintiff's litigation history has caused the undersigned to believe that (1) Plaintiff lacks a good-faith expectation in prevailing in her lawsuits, (2) she is vexatious and indeed incorrigible when proceeding pro se, (3) she has caused needless expense to other parties and placed an unnecessary burden on the Court and its personnel, and (4) no lesser sanctions (e.g., such as dismissal or chastisement) would be adequate to protect the Court and other parties.

[23]   *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins Comm'r of Soc. Sec. Admin.,* 06–CV–0059 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. City*

*of Syracuse,* 06–CV–1005 (N.D.N.Y. filed Aug. 21, 2006); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167 (N.D.N.Y. filed Sept. 29, 2006); *Jenkins v. City of Syracuse,* 07–CV–0930 (N.D.N.Y. filed Sept. 7, 2007); *Jenkins v. Sheriff's Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. USA,* 09–CV–0603 (N.D.N.Y. filed May 11, 2009); *Jenkins v. Rice,* 11–CV–1037 (N.D.N.Y. filed Aug. 31, 2011); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855 (N.D.N.Y filed May 23, 2012).

For example, eight of Plaintiff's actions have resulted in a dismissal for failure to state a claim or frivolousness, another has resulted in the pending recommendation of a dismissal on that ground, three others have resulted in a dismissal for lack of subject-matter jurisdiction, and another has resulted in a dismissal for failure to prosecute. [24]

[24]    *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457, Decision and Order (N.D.N.Y. filed Apr. 25, 2006) (Scullin, J.); *Jenkins Comm'r of Soc. Sec. Admin.,* 06–CV–0059, Decision and Order (N.D.N.Y. filed March 29, 2007) (Hurd, J.); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060, Memorandum–Decision and Order (N.D.N.Y. filed April 14, 2006) (Scullin, J.); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621, Decision and Order (N.D.N.Y. filed July 5, 2006) (Kahn, J.); *Jenkins v. City of Syracuse,* 06–CV–1005, Order (N.D.N.Y. filed Oct. 5, 2006) (Mordue, C.J.); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092, Decision and Order, (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167, Decision and Order (N.D.N.Y. filed Oct. 12, 2006) (Mordue, C.J.); *Jenkins v. City of Syracuse,* 07–CV–0930, Decision and Order (N.D.N.Y. filed Oct. 7, 2006) (Mordue, C.J.); *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order (N.D.N.Y. filed Nov. 21, 2007) (Hurd, J.); *Jenkins v. Murphy,* 08–CV–0921, Order (N.D.N.Y. filed Oct. 14, 2008) (McCurn, J.); *Jenkins v. USA,* 09–CV–0603, Decision and Order (N.D.N.Y. filed May 28, 2009) (McAvoy, J.); *Jenkins v. Rice,* 11–CV–1037, Decision and Order (N.D.N.Y. filed Oct. 11, 2011) (Kahn, J.); *Jenkins*

*v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855, Report–Recommendation (N.D.N.Y filed June 28, 2012) (Baxter, M.J.).

Moreover, Plaintiff has sued the Onondaga County Sheriff's Department four times. [25] As a result, she has been repeatedly instructed on the legal standard for suing a municipality. For example, on October 6, 2006, she was specifically informed of the need to establish a custom or policy which is the moving force behind a resulting injury. *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 06–CV–1092, Decision and Order, at 4 (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.). However, despite receiving that specific information, she has *repeatedly* continued to file improper claims against the Onondaga County Sheriff's Department. [26]

[25]    *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Sheriff's Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855 (N.D.N.Y filed May 23, 2012).

[26]    *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order at 3 (N.D.N.Y. filed Oct. 2, 2007) (Hurd, J.); *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order at 2 (N.D.N.Y. filed Nov. 21, 2007) (Hurd, J.); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV0855, Decision and Order, at 4–5 (N.D.N.Y filed May 24, 2012) (Baxter, M.J.); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855, Report–Recommendation, at 5–6 (N.D.N.Y filed June 28, 2012) (Baxter, M.J.); *see also, supra,* Part III.B.4. of this Decision and Order.

Finally, Plaintiff has repeatedly had to be ordered to comply with the Local Rules, and reminded that all factual allegations should be contained in the complaint itself, that paragraphs ought to be numbered, and that the individuals she alleges violated her rights must be identified. *See, e.g., Jenkins v. Dep't Corr. Servs.,* 06–CV–0621, Decision and Order (N.D.N.Y. filed July 5, 2006) (Kahn, J.); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092, Order (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.).

**\*14** Under such circumstances, a federal district court may impose reasonable filing restrictions on a *pro se* litigant in that particular court, pursuant to 28 U.S.C. § 1651(a) and its inherent authority to control and manage its own docket

so as to prevent abuse in its proceedings. For example, a federal district court may, after providing an appropriate opportunity to be heard, prohibit a vexatious litigant from filing, in that particular court, any action *pro se* (that is, without counsel), without prior leave of that court. *See Hong Mai Sa v. Doe,* 406 F.3d 155, 158 (2d Cir.2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system.") [internal quotations and citations omitted]; *In re Sassower,* 20 F.3d 42, 44 (2d Cir.1994) (where a *pro se* plaintiff has demonstrated a "clear pattern of abusing the litigation process by filing vexatious and frivolous complaints," a "leave to file" requirement may be instituted by the court as an appropriate sanction); *Moates v. Barkley,* 147 F.3d 207, 208 (2d Cir.1998) ( "[T]he district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard."); *Azubuko v. Unknown Boston Police Officers,* 08–CV–0330, 2008 WL 1767067, at * 1 (N.D.N.Y. Apr.16, 2008) (McCurn, J.).

For all of these reasons, this case is forwarded to Chief United States District Judge Gary L. Sharpe with a recommendation that an Anti–Filing Injunction Order be issued against Plaintiff.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 13) is ***GRANTED* in part** and ***DENIED* in part;** and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is conditionally ***DISMISSED;*** and it is further

**ORDERED** that Plaintiff is permitted to file an Amended Complaint within **THIRTY (30) DAYS** of the filing date of this Order; and it is further

**ORDERED** that, *if Plaintiff fails to timely file an Amended Complaint, the Clerk shall enter judgment dismissing this action without further Order of this Court;* and it is further

**ORDERED** that, upon filing of the Amended Complaint, this file in this matter be returned to the Court for further review; and it is further

**ORDERED** that the Clerk of the Court is directed to forward this case to Chief United States District Judge Gary L. Sharpe with the recommendation of the undersigned that an AntiFiling Injunction Order be issued against Plaintiff.

*The Court hereby certifies, for purposes of* 28 U.S.C. § 1915(a) (3), *that any appeal taken from the Court's final judgment in this action would not be taken in good faith.*

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 4052286

---

**End of Document**                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 4546718
Only the Westlaw citation is currently available.
FOR ONLINE PUBLICATION ONLY
United States District Court,
E.D. New York.

Elvis BYRD, Plaintiff,

v.

METROPOLITAN TRANSIT AUTHORITY;
Triborough Bridge and Tunnel Authority d/b/
a Metropolitan Transit Authority Bridges and
Tunnels; Bto Sabatino Ilardo; and "John and Jane
Does 1–10;" individual defendants sued in their
individual and official capacities, Defendants.

No. 15–CV–1364 (JG)(RLM).
|
Signed July 28, 2015.

**Attorneys and Law Firms**

Elvis Byrd, Staten Island, NY, pro se.

*MEMORANDUM AND ORDER*

JOHN GLEESON, District Judge.

**\*1** On March 13, 2015, plaintiff Elvis Byrd filed this *in forma pauperis* action *pro se* pursuant to 42 U.S.C. §§ 1983 and 1988. He alleges false arrest and imprisonment, excessive and unreasonable force, malicious prosecution and failure to intervene related to his detention and the issuance of two summonses on the Verrazano Narrows Bridge on March 30, 2012 by defendant officers and other employees of the Metropolitan Transportation Authority (erroneously named by plaintiff as Metropolitan Transit Authority) (the "MTA"), and its division, the MTA Bridges and Tunnels (formerly known as the Triborough Bridge and Tunnel Authority) ("MTABT" or "MTA Bridges and Tunnels") which operates the Verrazano Narrows Bridge. Byrd seeks damages. Byrd's request to proceed *in forma pauperis* is granted pursuant to 28 U.S.C. § 1915, the claims against defendants MTA and MTA Bridges and Tunnel are dismissed, and the claims may proceed against the remaining defendants as set forth below.

## BACKGROUND

The following facts are drawn from Byrd's complaint, the allegations of which are assumed to be true for purposes of this Memorandum and Order. Byrd alleges that on March 30, 2012, at approximately 5:25 P.M., in toll lane 25 on the Verrazano Narrows Bridge, MTA Bridges and Tunnels Officer Sabatino Ilardo kicked Byrd's vehicle as Byrd was pulling forward to pay the toll and then asked for Byrd's license and registration. Compl. ¶¶ 9–14.[1] When Byrd questioned why Ilardo kicked his vehicle, Ilardo cursed at him, reached into the vehicle and pulled Byrd through the window of the driver's side door. *Id.* ¶ ¶ 15–18. When defendants John or Jane Does 1–10 arrived, Byrd was detained for forty-five minutes and issued two summonses for unspecified violations, which were later dismissed. *Id.* ¶¶ 19–25. Byrd alleges that the defendants had no basis to mistreat him, to detain him, or to issue him summonses. He seeks damages for the violations of his constitutional rights.

[1]    I refer to the complaint and the documents annexed to the complaint as the "complaint" or "Compl." *See Sira v. Morton,* 380 F.3d 57, 67 (2d Cir.2004) ("A complaint is deemed to include any written instrument attached to it as an exhibit." (citing Fed.R.Civ.P. 10(c))).

## STANDARD OF REVIEW

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). This rule does not require a plaintiff to provide "detailed factual allegations" in support of his claims in order to survive a motion to dismiss, *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), but it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Indeed, mere conclusory allegations or "naked assertion[s]" will not survive dismissal without at least some "further factual enhancement" providing substance to the claims alleged. *Twombly,* 550 U.S. at 557. Additionally, a complaint that is "so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised," fails to comply with Rule 8 of the Federal Rules of Civil Procedure. *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d

Cir.1988); *see also Simmons v. Abruzzo,* 49 F.3d 83, 86–87 (2d Cir.1995).

**\*2** When a plaintiff proceeds without legal representation, the Court must view the complaint in a more liberal light, affording it the strongest interpretation possible. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474–75 (2d Cir.2006) (per curiam). Even so, the Court must dismiss an *in forma pauperis* complaint if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). And "a *pro se* plaintiff must still comply with the relevant rules of procedural and substantive law, including establishing that the court has subject matter jurisdiction over the action." *Wilber v. U.S. Postal Serv.,* No. 10–CV–3346 (ARR), 2010 WL 3036754, at \*1 (E.D.N.Y. Aug.2, 2010) (internal quotation marks and citations omitted).

DISCUSSION

Byrd brings this action pursuant to 42 U.S.C. §§ 1983 and 1988.[2] To state a claim under Section 1983, a plaintiff must show that the challenged conduct was committed by a person acting under color of state law and that such conduct "deprived [him] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir.2010). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993).

[2] The prevailing party in a Section 1983 action is entitled to recover attorney's fees pursuant Section 1988. *Bonner v. Guccione,* 178 F.3d 581, 596 (2d Cir.1999). Attorney's fees may not, however, be awarded to a *pro se* litigant for representing himself. *Kay v. Ehrler,* 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991) (holding that a *pro se* litigant is not entitled to attorneys' fees even if the litigant is a lawyer); *see also Pietrangelo v. U.S. Army,* 568 F.3d 341, 342 (2d Cir.2009) (per curiam) (denying attorneys' fees to a *pro se* litigant in a Freedom of Information Act case); *Hawkins v. 1115 Legal Serv. Care,* 163 F.3d 684, 694–95 (2d Cir.1998) (holding that attorneys' fees

are unavailable for a *pro se* litigant in a Title VII case).

Here, Byrd sues the MTA and the MTABT, the division of the MTA that operates the Verrazano Narrows Bridge and other bridges and tunnels in New York City. Neither the MTA nor the MTABT is a proper party to this action. Defendant MTA is "a New York State public benefit corporation that provides public transportation services to the Greater New York City area." *Mazyck v. Metro. Transp. Auth .,* 893 F.Supp.2d 574, 580 (S.D.N.Y.2012). Public benefit corporations, such as the MTA, are municipal entities for the purpose of Section 1983. *Jandres v. County of Nassau,* No. 12–CV–3132 (JS) (GRB), 2012 WL 5879532, at \*6 (E.D.N.Y. Nov. 21, 2012) (collecting cases imposing municipal liability on public benefit corporations); *Adam v. Metro. Transp. Auth.,* No. 07–CV–8807 (JGK), 2011 WL 891441, at \*3 n. 2 (S.D.N.Y. Mar.15, 2011) ("The MTA is a New York City authority. The parties do not dispute that the MTA and its police department are municipal entities.").

In order to allege a claim for relief under Section 1983 against a municipal defendant, such as the City of New York, or as relevant here, a public benefit corporation such as the MTA, a plaintiff must allege the existence of an officially adopted policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right. *Monell v. Dep't of Social Servs. of the City of New York,* 436 U.S. 658, 692–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Municipalities can be held liable for "practices so persistent and widespread as to practically have the force of law," *Connick v. Thompson,* ——U.S. ——, ——, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011), but such claims still must satisfy the plausibility standard under the Supreme Court decisions of *Twombly* and *Iqbal. See Plair v. City of New York,* 789 F.Supp.2d 459, 469 (S.D.N.Y.2011); *Meehan v. Kenville,* 555 F. App'x 116, 117 (2d Cir.2014) (summary order) (claim against municipal entity was properly dismissed under 28 U.S.C. § 1915 for "failure to plausibly allege that any constitutional violation resulted from a custom, policy or practice of the municipality"); *see also Hoffman v. City of New York,* No. 97–CV–4284 (SJ), 1998 WL 212894 (E.D.N.Y. Apr.28, 1998) (dismissing *pro se* complaint against MTA and the City of New York under *Monell* ). A court may not impose liability on the MTA for the acts of its officers or employees simply on the doctrine of *respondeat superior. Monell,* 436 U.S. at 691.

**\*3** Although Byrd asserts that the allegedly wrongful acts or omissions on the part of Officer Ilardo and the John and Jane

Doe employees of the MTA or MTABT are attributable to a municipal policy or custom, *see* Compl. ¶¶ 50–51, nothing in his complaint suggests facts in support of such a conclusion. Only two paragraphs of the complaint allege *Monell* liability. Paragraph 50 states that the individual defendants acted as police officers or employees of the MTA or MTABT "pursuant to the customs, usages, practices, procedures, and the rules of the MTA and/or the MTABT all under the supervision of ranking officers of said police department and supervisors of said entities." *Id.* ¶ 50. The next paragraph concludes that the defendants "engaged in Constitutionally-violative conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States." *Id.* ¶ 51.

However, the complaint does not contain any facts suggesting that anyone other than Byrd has been subjected to the type of detention Byrd alleges. As the Second Circuit has made clear, "isolated acts ... by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability." *Jones v. Town of East Haven,* 691 F.3d 72, 81 (2d Cir.2012) (citing *Villante v. Dep't of Corr.,* 786 F.2d 516, 519 (2d Cir.1986); *see also Henderson v. Town of Greenwich,* 317 F. App'x 46, 47 (2d Cir.2009) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell.* ") (quoting *Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)); *Giaccio v. City of New York,* 308 F. App'x 470, 472 (2d Cir.2009) (summary order) (affirming summary judgment in favor of defendants and dismissing *Monell* claim where plaintiff identified "at most, only four examples" of constitutional violations, because "[t]his evidence falls far short of establishing a practice that is so persistent or widespread as to justify the imposition of municipal liability") (internal quotations omitted); *Amnesty Am. v. Town of West Hartford,* 361 F.3d 113, 130 (2d Cir.2004) (plaintiff must show that her constitutional violation "occurred as the result of a municipal policy rather than as a result of isolated misconduct by a single actor").

Nor is Byrd's conclusory allegation that the conduct constituted a "custom, usage, practice, procedure or rule" that deprived Byrd of his constitutional rights sufficient to state a claim for municipal liability. *See Murray v. Admin. for Children's Servs.,* 476 F.Supp.2d 436, 442 (S.D.N.Y.2007), *aff'd,* 293 F. App'x 831 (2d Cir.2008) ("The Amended Complaint does not allege other similar instances of malicious

prosecution that could raise an inference that the City maintains a policy or custom of deliberate indifference to these types of unconstitutional deprivations."); *Worrell v. City of New York,* No. 12–CV–6151 (MKB), 2014 WL 1224257, at *12 (E.D.N.Y. Mar.24, 2014) (a "single incident of Plaintiff's own allegedly negligent investigation is not sufficient to impose municipal liability without additional allegations from which this Court may infer that it was caused by a practice so widespread as to practically have the force of law."); *Irish v. City of New York,* No. 09–CV–5568 (RMB), 2010 WL 5065896, at *5 (S.D.N.Y. Dec.6, 2010) ("Plaintiff's speculative and conclusory allegations of an unlawful custom and practice are insufficient to support a claim of municipality liability based upon *Monell ....*").

**\*4** In sum, Byrd describes isolated conduct by a rogue officer. He invokes terms of art used in *Monell,* such as "custom" and "practice," but he fails to allege any facts tending to show that the MTA or the MTABT caused any claimed constitutional violation. The absence of any facts supporting an unconstitutional policy, practice, or custom by the City, or a failure to supervise or train, precludes *Monell* liability. Therefore, the complaint is dismissed as to the MTA or MTA Bridges and Tunnels for failure to state a claim. 28 U.S.C. § 1915(e)(2)(B)(ii).

## CONCLUSION

Accordingly, I dismiss plaintiff's 42 U.S.C. § 1988 claims against all defendants and his 42 U.S.C. § 1983 claims against the MTA and the MTA Bridges and Tunnels for failure to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). No summons shall issue as to these defendants.

Plaintiff's Section 1983 claims against the remaining defendant, "BTO Sabatino Ilardo," an officer employed by the MTA Bridges and Tunnels, may proceed.[3] The case is referred to the Honorable Cheryl Pollak, United States Magistrate Judge, for pretrial supervision. I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. *Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

[3]     For now, the claims against defendants "John or Jane Does 1–10," who were allegedly involved in plaintiff's detention and the issuance of the summonses may proceed. Further identifying

2015 WL 4546718

information will be necessary before the names of actual individual defendants may be substituted for the "John or Jane Doe" defendants.

So ordered.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 4546718

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

---

2007 WL 607341

2007 WL 607341
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Paul CIPRIANI, Plaintiff,
v.
Harry C. BUFFARDI, Sheriff; Schenectady
County Jail; Cheryl Clark, M.D.;
Kevin J. O'Connor, Defendants.

No. 9:06-CV-0889(LEK/DRH).
|
Feb. 20, 2007.

**Attorneys and Law Firms**

Paul Cipriani, Plaintiff, pro se.

***DECISION and ORDER***

LAWRENCE E. KAHN, U.S. District Judge.

 *1 Presently before the Court is an amended complaint filed by Plaintiff Paul Cipriani ("Plaintiff"). Amended Compl. (Dkt. No. 10). This amended complaint was submitted in compliance with the Memorandum-Decision and Order issued by this Court on November 27, 2006 ("November Order"). Mem.-Decision and Order (Dkt. No. 7).

In its November Order, the Court advised plaintiff that he must set forth facts demonstrating that Defendants were personally involved in a violation of Plaintiff's rights. *Id.* at 4. Plaintiff was also advised that in order to establish the liability of a municipality, he must allege a custom or policy which is the moving force behind the violation. *Id.*

In his amended complaint, Plaintiff names thirteen defendants and asserts numerous claims against them arising from his confinement at Schenectady County Jail. Amended Compl. (Dkt. No. 10).

The Court notes that plaintiff has not named "Schenectady County Jail," "Cheryl Clark," or "Kevin J. O'Connor" in his amended Complaint. Therefore, "Schenectady County Jail," "Cheryl Clark," and "Kevin J. O'Connor" are hereby dismissed as defendants in this action.

The Court also notes that Plaintiff's amended Complaint mentions "Mr. Booth" and "Mr. Purdy" only in the caption, and fails to allege any act or omission by these individuals. Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff. *Gonzalez v. City of New York,* No. 97 CIV. 2246(MGC), 1998 WL 382055, at *2 (S.D.N.Y. July 9, 1998) (citing *Crown v. Wagenstein,* No. 96 CIV. 3895(MGC), 1998 WL 118169, at *1 (S.D.N.Y.Mar.16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement) and *Taylor v. City of New York,* 953 F.Supp. 95, 99 (S.D.N.Y.1997)). Because plaintiff has failed to allege any personal involvement on the part of defendants "Mr. Booth" and "Mr. Purdy", they are hereby dismissed as defendants in this action.

In his amended Complaint, Plaintiff alleges that the remaining Defendants committed various violations of his constitutional rights, including inadequate medical care, breach of doctor-patient confidentiality, excessive force, denial of due process in a disciplinary proceeding, and interference with the grievance process. Amended Compl. (Dkt. No. 10).

Based on the foregoing, Plaintiff's amended complaint as against the remaining Defendants is accepted for filing.

Plaintiff is advised, however, that the U.S. Marshals cannot effect service on a "John Doe" defendant. In the event that plaintiff wishes to pursue this claim against the "John Doe" defendants named in the amended Complaint, he must take reasonable steps to ascertain their identities. Plaintiff may then file a Motion to amend his complaint and seek leave of the Court to add such individuals, by name, as defendants to this lawsuit. Plaintiff is further advised that if these individuals are not timely served, the action will be against them will be dismissed.

 *2 WHEREFORE, it is hereby

**ORDERED,** that "Mr. Booth," "Mr. Purdy," "Schenectady County Jail," "Cheryl Clark," and "Kevin J. O'Connor" are **DISMISSED** as defendants in this action, and it is further

**ORDERED,** that the Clerk revise the docket to add "Schenectady County," "Mr. Burns," "Mr. Jones," "Mr. Adams," "Ms. Jones," "Ms. Hull," "John Doe # 1," "John Doe # 7," "John Doe # 10," and "Loraine Walker" as defendants in this action, and it is further

**ORDERED,** that the Clerk issue summonses naming the remaining defendants and forward them, along with copies of the amended Complaint (Dkt. No. 10), to the United States Marshal for service upon the defendants, together with a copy of this Order. [1] The Clerk shall also forward a copy of the summons and amended Complaint by mail to the County Attorney for Schenectady County, together with a copy of this Order, and it is further

[1]    Plaintiff was granted leave to proceed with this action *in forma pauperis.* Mem.-Decision and Order (Dkt. No. 7).

**ORDERED,** that a formal response to Plaintiff's amended Complaint be filed by Defendants or their counsel as provided for in Rule 12 of *the Federal Rules of Civil Procedure* subsequent to service of process on Defendants, and it is further

**ORDERED,** that Plaintiff take reasonable steps to ascertain the identities of any other individual(s) that purportedly violated Plaintiff's civil and/or constitutional rights and, if appropriate, file a Motion to amend his complaint and add such individuals, by name, as defendants to this lawsuit, and it is further

**ORDERED,** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States

District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. *Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be returned, without processing.* Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions, which must be returnable before the assigned Magistrate Judge with proper allowance for notice as required by the Rules. *Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in his address; his failure to do so will result in the dismissal of this action.* All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on plaintiff by regular mail.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 607341

---

**End of Document** © 2020 Thomson Reuters. No claim to original U.S. Government Works.